WILLIAMS, J.
 

 hThe defendant, Bradley Culp, was charged by amended bill of information with distribution of methamphetamine, a violation of LSA-R.S. 40:967, and illegal possession of a firearm by a convicted felon, LSA-R.S. 14:95.1. After a jury trial, the defendant was found guilty as charged. Defendant’s motion for new trial was denied. Defendant was sentenced to 15 years of imprisonment at hard labor without benefit of probation or suspension of sentence for distribution of methamphetamine, and 15 years of imprisonment at hard labor without benefit of parole, probation or suspension of sentence for the firearms conviction, with the sentences to run concurrently. The defendant appeals. For the following reasons, we affirm defendant’s convictions and the sentence for possession of a firearm by a convicted felon. However, we remand the case for resentencing with respect to the sentence imposed for distribution of methamphetamine.
 

 
 *433
 
 FACTS
 

 The defendant was previously convicted of distribution of methamphetamine in September 2006, and sentenced to serve 10 years’ imprisonment at hard labor. The defendant’s sentence was suspended and he was placed on supervised probation for 3 years, subject to general and special conditions, including that defendant and his property would be subject to a search at all times and he would not be allowed to possess any firearms.
 

 On June 13, 2007, David Ford, a probation officer, and Darrell Winder, a detective with the Winn Parish Sheriffs Office, traveled to defendant’s residence in Winn Parish, where both a trailer and a house were |2located. Officer Ford, who was monitoring the defendant’s probation, made the visit to perform an interview and drug screen. Det. Winder accompanied Officer Ford to serve a child support warrant on the defendant. After being admitted into the house, Ford and Winder saw defendant sitting in the living room with three other individuals. After going to another room, Officer Ford told the defendant that he had received some information regarding drug use and the defendant admitted that he had taken drugs. Officer Ford advised the defendant he needed to perform a “residence check” and to give defendant a drug screen. The defendant then stated there were firearms that belonged to his wife in the house. Officer Ford retrieved a shotgun and a rifle from the residence.
 

 During a search of the living room, a small bag containing suspected methamphetamine was recovered, along with suspected drug paraphernalia. The defendant was arrested and transported to the Winn Parish Sheriffs Office, where he submitted to a drug screen and tested positive for THC (from marijuana) and amphetamines. Defendant was charged with distribution of methamphetamine and illegal possession of a firearm by a convicted felon. A jury found defendant guilty as charged and his motion for new trial was denied. Defendant was sentenced to serve 15 years at hard labor without benefits for each conviction, with the sentences to run concurrently. This appeal followed.
 

 DISCUSSION
 

 The defendant contends the testimony of the witnesses was insufficient to support his convictions. Defendant argues that no rational |3trier of fact, viewing all of the evidence in a light most favorable to the prosecution, could have found guilt beyond a reasonable doubt given the lack of credibility of the state’s witnesses.
 

 When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence since the accused may be entitled to an acquittal under
 
 Hudson v. Louisiana,
 
 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981). The standard of appellate review for a sufficiency claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Hearold,
 
 603 So.2d 731 (La.1992).
 

 The
 
 Jackson
 
 standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such eases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient
 
 *434
 
 for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime.
 
 State v. Sutton,
 
 436 So.2d 471 (La.1983);
 
 State v. Parker,
 
 42,311 (La.App.2d Cir.8/15/07), 963 So.2d 497. This standard, now legislatively embodied in LSA-C.Cr.P. art. 821, does not provide the appellate court with a vehicle 14to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 2005-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Robertson,
 
 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Hill,
 
 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758,
 
 writ denied,
 
 2007-1209 (La.12/14/07), 970 So.2d 529.
 

 Pursuant to LSA-R.S. 40:967(A), it is unlawful for any person to knowingly or intentionally distribute a Schedule II controlled dangerous substance, which includes methamphetamine.
 
 See
 
 LSA-R.S. 40:964. To prove the crime of distribution, the state must show (1) “delivery” or “physical transfer;” (2) guilty knowledge of the controlled dangerous substance at the time of transfer; and (3) the exact identity of the controlled dangerous substance.
 
 State v. Anderson,
 
 29,282 (La.App.2d Cir.6/18/97), 697 So.2d 651.
 

 To support a conviction for possession of a firearm by a convicted felon, the state must prove: (1) the possession of a firearm; (2) a previous conviction of an enumerated felony; (3) absence of the 10-year statutory period of limitation; and (4) general intent to commit the offense. LSA-R.S. 14:95.1;
 
 State v. Husband,
 
 437 So.2d 269 (La.1983);
 
 State v. Ray,
 
 42,096 (La.App.2d Cir.6/27/07), 961 So.2d 607. The general intent to commit the offense of possession of a firearm by a convicted felon may be proved through the actual possession of the firearm or through the constructive | spossession of the firearm.
 
 State v. Johnson,
 
 2003-1228 (La.4/14/04), 870 So.2d 995;
 
 State v. Chatman,
 
 43,184 (La.App.2d Cir.4/30/08), 981 So.2d 260. For purposes of the offense of possession of a firearm by a convicted felon, whether the proof is sufficient to establish possession turns on the facts of each case. Further, guilty knowledge may be inferred from the circumstances of the transaction and proved by direct or circumstantial evidence.
 
 State v. Chatman, supra.
 

 Constructive possession of a firearm occurs when the firearm is subject to the defendant’s dominion and control. A defendant’s dominion and control over a weapon constitutes constructive possession even if it is only temporary and even if the control is shared.
 
 State v. Bailey,
 
 511 So.2d 1248 (La.App. 2d Cir.1987),
 
 writ denied,
 
 519 So.2d 132 (La.1988). Constructive possession entails an element of awareness or knowledge that the firearm is there and the general intent to possess it.
 
 State v. Chatman, supra; State v. Kennedy,
 
 42,258 (La.App.2d Cir.8/15/07), 963 So.2d 521.
 

 In the present case, Officer Ford testified that he and Winder went to the house on defendant’s property and that Ashley Andrews answered the door. Ford stated that he observed the defendant sitting in the living room with Ronnie Ferguson and James Morrison. Ford testified that he spoke privately with defendant, who admitted that he had been “doing some drugs.” Officer Ford advised the defendant that he needed to perform a “residence check” and defendant said there were firearms in the house. The defendant told Ford the location of the guns, which he said belonged to his wife. Officer Ford stated that he re
 
 *435
 
 trieved a shotgun and a .22 caliber rifle [¿From the residence.
 

 Detective Winder testified that after placing defendant under arrest for the child support warrant, he recovered a little pink bag containing suspected methamphetamine from underneath the couch cushion next to where the defendant had been seated. Det. Winder stated that he mistakenly listed the color of the bag as “yellow” in his police report. The crime lab later confirmed that the substance in . the baggie was methamphetamine. Det. Winder testified that he advised everyone present of their rights, and then asked each person whether the methamphetamine belonged to them and that each individual denied ownership of the drug. In addition, five glass pipes and a “torch,” objects commonly used with illegal drugs, were recovered from the scene. At trial, the seized shotgun, methamphetamine and drug paraphernalia were identified and introduced into evidence.
 

 Morrison testified that shortly before the police arrived, the defendant offered him a glass pipe and that he took a “hit,” meaning “a smoke,” from the pipe, believing the pipe contained methamphetamine. Ferguson corroborated that the defendant passed a pipe to Morrison. Ferguson testified that he observed defendant stick the pipe and methamphetamine into the couch when the officers arrived. On cross-examination, both Morrison and Ferguson acknowledged that they had agreed to testify truthfully against defendant as part of a plea bargain with the state to reduce their potential sentences.
 

 Andrews testified that she had observed defendant load the glass pipe with a substance from a little plastic bag in his pocket and then pass the pipe |7to Morrison. Andrews acknowledged that in exchange for her truthful testimony her pending charges of possession of methamphetamine and drug paraphernalia would be dismissed.
 

 In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State v. Wiltcher,
 
 41,981 (La.App.2d Cir.5/9/07), 956 So.2d 769. Here, the testimony demonstrated that defendant placed methamphetamine from a small bag into a pipe and physically transferred the pipe to another. The defendant’s knowledge that the pipe contained an illegal drug was shown by his attempt to hide the small bag under the couch cushion, from where it was recovered by police. The bag was later determined to contain methamphetamine.
 

 In addition, Officer Ford testified that defendant had been convicted of a felony and that defendant knew the location of the firearms inside his house. This testimony demonstrated that defendant was a convicted felon who exercised control over the guns. After reviewing the record, we conclude that the physical evidence and the testimony, which was believed by the trier of fact, was sufficient to support the defendant’s convictions of distribution of methamphetamine and illegal possession of a firearm by a convicted felon. Thus, the assignment of error lacks merit.
 

 Use of Peremptory Challenges in Jury Selection
 

 The defendant contends the trial court erred in preventing him from using one of his 12 peremptory challenges under LSA-C.Cr.P. art. 799. Defendant argues that the court’s erroneous ruling violated his due process | «rights, requiring a new trial.
 

 The denial of a motion for new trial is not subject to appellate review except for error of law. LSA-C.Cr.P. art.
 
 *436
 
 858;
 
 State v. Jones,
 
 41,672 (La.App.2d Cir.1/14/09), 999 So.2d 1156. The decision to grant or deny a new trial rests in the sound discretion of the trial court.
 
 State v. Brisban,
 
 2000-3437 (La.2/26/02), 809 So.2d 923. Generally, a motion for new trial will be denied unless the defendant establishes that he or she has suffered some injustice. LSA-C.Cr.P. art. 851;
 
 State v. Burrell,
 
 561 So.2d 692 (La.1990),
 
 cert. denied,
 
 498 U.S. 1074, 111 S.Ct. 799, 112 L.Ed.2d 861 (1991);
 
 State v. Jones, supra.
 

 LSA-C.Cr.P. art. 841(A) provides that an irregularity or error cannot be raised after trial unless it was objected to at the time of occurrence. At the time the ruling or order of the court is made, a party must make known to the court his objections to the action of the court and the grounds therefor. Under Article 841, the defendant must make known the grounds for his objection and he is limited on appeal to those grounds articulated at trial; he must point to the specific error so that the trial court has the opportunity to make the proper ruling and prevent or cure any possible error.
 
 State v. Sullivan,
 
 97-1037 (La.App. 4th Cir.2/24/99), 729 So.2d 1101,
 
 writ denied,
 
 99-0797 (La.9/17/99), 747 So.2d 1093. There are two purposes to this rule: to put the trial court on notice of the alleged irregularity or error, so that the trial judge can cure the error, and to prevent a party from gambling for a favorable outcome and then appealing on errors that could have been addressed by an objection if the outcome is not as [¡¡hoped.
 
 State v. Lanclos,
 
 2007-0082 (La.4/8/08), 980 So.2d 643;
 
 State v. Knott,
 
 05-2252 (La.5/5/06), 928 So.2d 534.
 

 The court in
 
 State v. Hailey,
 
 2002-1738 (La.App. 4th Cir.9/17/03), 863 So.2d 564,
 
 writ denied,
 
 2004-0612 (La.2/18/05), 896 So.2d 20 succinctly explained backstriking and the procedure for exercising peremptory challenges:
 

 Backstriking is a party’s exercise of a peremptory challenge to strike a prospective juror after initially accepting him.
 
 State v. Plaisance,
 
 2000-1858, p. 30, n. 4 (La.App. 4th Cir.3/6/02), 811 So.2d 1172, 1193, n. 4,
 
 writ denied,
 
 2002-1395 (La.11/27/01), 831 So.2d 270,
 
 cert. denied, Plaisance v. Louisiana,
 
 538 U.S. 1038, 123 S.Ct. 2084, 155 L.Ed.2d 1071 (2003). An accused has a constitutionally guaranteed right to peremptorily challenge jurors. La. Const. Art. I, § 17. La.C.Cr.P. art. 795(B)(1) states only that peremptory challenges shall be exercised prior to the swearing of the jury panel. La.C.Cr.P. art. 788(A) states that when a prospective juror is accepted by the State and the defendant, he shall be sworn immediately as a juror, subject to the provisions of La. C.Cr. P. art. 795. Thus, in
 
 State v. Watts,
 
 579 So.2d 931 (La.1991), the Louisiana Supreme Court cited La.C.Cr.P. art. 795(B)(1) in holding that even though a prospective juror is “temporarily” accepted and immediately sworn as juror in accordance with La.C.Cr.P. art. 788, that juror may nevertheless be challenged peremptorily prior to the swearing of the entire jury panel.
 

 In State
 
 v. Taylor,
 
 93-2201 (La.2/28/96), 669 So.2d 364, the Louisiana Supreme Court agreed with the defendant that
 
 Watts
 
 was violated when the trial court denied the defendant the right to use backstrikes, i.e., exercise his remaining peremptory challenges immediately before the jury panel was sworn, but found the error harmless. In
 
 Plai-sance, supra,
 
 this court held that La. C.Cr.P. art. 795(B)(1), as interpreted in
 
 Watts,
 
 provided for backstrikes. This court further held that the trial court in
 
 Plaisance
 
 had erred in denying the defendant the right to use backstrikes, but
 
 *437
 
 found the error harmless, citing
 
 Taylor, supra.
 
 Thus, a defendant has a right under La.C.Cr.P. art. 795(B)(1) to employ backstrikes, but the erroneous denial of that right is subject to the harmless error analysis.
 

 LSA-C.Cr.P. art. 799 provides in part that in trials of offenses 110punishable necessarily by imprisonment at hard labor, each defendant shall have 12 peremptory challenges, and the state shall have 12 for each defendant.
 

 In the present case, the jury was sworn in at the end of the day on May 12, 2008. The next morning, before the jury was brought in to begin the second day of trial, the defense attorney raised an objection and the following discussion transpired:
 

 BY MS. DESLATTE: ... Yesterday, and I know that we have — we selected a jury, that jury has been sworn in by the clerk yesterday afternoon before they were dismissed, before the panel was dismissed. For the — the record I would like to — to lodge another objection in addition to that that was done at sidebar. That being that when [we] were at sidebar yesterday, that the Court — I had issued a — a seventh peremptory challenge that was rejected by the Court that I had already used mine. And in the case of twelve jurors there are twelve peremptory exceptions that are allowed to each side to exercise, and I was — I was limited and not able to exercise all of those.... So, based on that I make that objection, give notice to — to take an appeal on that process and also ask for a mistrial.
 

 BY MR. NEVILS: ... I will say, Your Honor, that prior to empaneling of any juror, the Court, after a discussion with counsel, gave defense counsel the opportunity to backstrike whoever they wanted to. That counsel has not run out of challenges, was free to challenge whoever that they felt was necessary to challenge and did not do so. So, I don’t know that there’s any legitimacy to that argument at all because through agreement of counsel and through the Court’s own order |, ,the defendant was afforded an opportunity to challenge whoever they — they decided to.
 

 BY MR. CREWS: Your Honor, if I remember what happened yesterday was we all agreed to this procedure once we got the panel set and if she wanted to do backstrikes, that would be the time. You know we could certainly have addressed that yesterday had there been an issue dealing with that. But, everyone was given ... the same opportunities and she had an opportunity, and I think that .... it really didn’t have any — any prejudicial effect.
 

 BY MS. DESLATTE: That’s somewhat correct, Judge, in that we agreed on the procedure to be used for back-strikes. But in preparation or in an attempt to use my seventh backstrike, I was informed by the Court that I had already used six and then my seventh one was taken off of my list. And in that there was error in that there was still six peremptory challenges at my disposal to use on that second panel or the remaining jurors. And I think that will be noted — that— that conversation should be also on the record.
 

 BY THE COURT: That — all of that is on the record. Bear with me. I’m looking for the article. I thought it was six. Thought each side had six.
 

 BY MR. CREWS: No. We got twelve.
 

 BY THE COURT: I — I believe you, but I’ve got to see it.
 

 
 *438
 
 BY MR. CREWS: I think it’s six where it’s not necessarily at hard labor.
 

 BY THE COURT: That is correct.
 

 BY MS. DESLATTE: It’s six and then six — six person jury.
 

 BY THE COURT: In a trial of offenses punishable by death or necessarily by imprisonment at hard labor, which this is—
 

 BY MS. DESLATTE: That’s correct.
 

 BY THE
 
 COURT:
 
 — each
 
 defendant shall have twelve peremptory challenges, and the state twelve for each defendant. In all
 
 |
 
 nother cases each defendant shall have six peremptory challenges. So, I apologize for my mistake and your objection is noted.
 

 BY MS. DESLATTE:
 
 And then again, Your Honor, we move for a mistrial based on the fact that we were not able to exercise those rights that we’re entitled, to in selecting the jury, and that there are backstñkes. They would have made evidence by the note that we gave to Your Honor and the reporter yesterday and we’re not able to use.
 

 BY THE COURT:
 
 Mistñal denied. Are you ready for the jury?
 

 ⅜ * *
 

 BY MS. DESLATTE:
 
 And, Your Hon- or, also, just for the record, we’re going to object to the first ruling regarding the testimony of Ms. Andrews as well as the objection regarding
 
 the—
 
 the mistñal.
 

 BY THE COURT: That is all noted. Please bring in the jury.
 

 (Emphasis added.)
 

 Thereafter, a hearing on the defendant’s motion for new trial was held on July 1, 2008. Initially, the district judge noted that he had listened to the recordings of the jury selection and sidebar conferences and taken notes from those recordings, but did not read the transcripts. The defendant’s attorney argued that a new trial was necessary because the court had previously prevented defendant from exercising a seventh peremptory challenge. The district attorney responded that he did not recall that a seventh peremptory challenge was either made or denied. The court stated that while the strikeback issue was evident from the sidebar recording, the alleged restriction to six peremptory challenges was not. Defense counsel replied that she had written on a sheet of paper the names of the jurors that defendant wanted to challenge and submitted the list to the court. Counsel 11sasserted that she was then told she “needed to take one off and a name was scratched off of it. So I had to withdraw that peremptory challenge.” However, the defendant’s attorney acknowledged she did not object to this alleged limitation of challenges until after the jury had been sworn, explaining that she realized while reviewing her notes after court was dismissed on May 12 that she had been limited on the peremptory challenges. The parties then agreed that the judge and counsel would listen to the recording of the sidebar discussion held after the second juror panel was questioned. During the second sidebar conference, after the parties had agreed to a joint motion to challenge a certain prospective juror for cause, the following discussion was held:
 

 BY THE COURT:
 
 Don’t
 
 — don’t
 
 you already have four?
 

 BY MS. DESLATTE: Did I already use four? Is that how many I used? How many did I have — -Well, yeah—
 

 BY THE COURT: Used four.
 

 BY MS. DESLATTE: — because I had to use — Yeah. I had to use that other one. That’s right.
 

 
 *439
 
 BY THE COURT: See. Here’s — here’s my list. You used four.
 

 BY MS. DESLATTE:
 
 I had to use the one I didn’t want to use. That’s right. Okay. I forgot I had to add Mr. Banta.
 

 BY THE COURT: Okay. The State has excused Mary Turner.
 

 BY MS. DESLATTE: Okay.
 

 BY THE COURT:
 
 And that’s all and the defense has excused Stacy Howell and Robert Heard.
 
 Okay.
 

 (Emphasis added.)
 

 Thereafter, there was some counting and it was determined that there were 12 prospective jurors plus two alternates. Then the following transpired:
 

 BY THE COURT:
 
 There’s the defense. Right now
 
 — So,
 
 \ uare y’all gonna question further and see about a back-strike?
 

 BY MR. CREWS: We’ve already questioned. So,—
 

 * * *
 

 BY MR.
 
 CREWS:
 
 — if
 
 you gonna have to backstrike, go ahead and do it now. You got anybody you want to back-strike?
 

 BY MR. NEVILS:
 
 So, it’s up to you. Look at your one through twelve and see if you want to backstrike any of them.
 

 BY MS. DESLATTE: Well, and Banta probably would have been the one that I would have had to come back with—
 

 BY MR. CREWS: You would have done it this point anyway.
 

 BY MS. DESLATTE: I’d a done at this point. However, I wouldn’t have done it initially. So, I mean, you know, it’s one of those and ten after four. /
 
 don’t, you know, I don’t have
 
 — I
 
 don’t have grounds at this point to say based on the
 
 questioning,—
 

 BY MR. CREWS: Huh-uh (No.)
 

 BY MS.
 
 DESLATTE:
 
 — you
 
 know, where we
 
 are—
 

 BY MR. CREWS: Huh-uh (No.)
 

 BY MS.
 
 DESLATTE:
 
 — that
 
 there would be any that should
 
 — should
 
 go back and be removed. Banta would have been my concern. Banta, McAl-lister.
 

 BY MR. CREWS: Think we need two alternates?
 

 BY MS. DESLATTE: We
 
 dealt with McAllister.
 

 *
 
 * *
 

 BY THE COURT: ... Then we’ll be ready.
 

 BY MR. CREWS: All right.
 

 COURT REPORTER NOTE: End of second sidebar.
 

 (Emphasis added.)
 

 Neither the transcript of the second sidebar nor the district court minutes reflect any express contemporaneous objection to the trial court’s alleged refusal to allow the defense to exercise a seventh peremptory challenge. To the contrary, the transcript demonstrates that after the defendant had already made six peremptory challenges, the court | ^specifically asked whether defendant wanted to make any additional backstrikes and the defense counsel did not challenge any other juror.
 

 Consequently, the record supports a finding that the defense was, in fact, offered the opportunity to exercise additional backstrikes (peremptory challenges) before the jury was accepted and sworn, but chose not to exercise any further challenges. Because the record shows that the defense had previously exercised six per
 
 *440
 
 emptory challenges, any additional back-strike would have been the seventh peremptory challenge. Thus, the defendant was not limited to six peremptory challenges as alleged herein.
 

 In any event, even if the trial court had erroneously prevented the defendant from exercising his remaining peremptory challenges, any error was harmless because the jury verdicts were unanimous.
 
 See State v. Taylor, supra.
 
 Based upon the evidence contained in the record, including the transcription of the two sidebar conferences, we cannot say that the district court abused its discretion in denying the defendant’s motion for new trial. The assignment of error lacks merit.
 

 Emr Patent
 

 We have reviewed the record for error patent. LSA-R.S. 14:95.1(B) provides that whoever is found guilty of possession of a firearm by a convicted felon shall be imprisoned for not less than ten years at hard labor without benefits and “be fined not less than one thousand dollars nor more than five thousand dollars.” In this case, the trial court imposed an illegally lenient sentence by failing to assess any fine. Pursuant to LSA-C.Cr.P. art. 882(A), an illegal sentence “may” be corrected at any time by the court that | ^imposed the sentence or by an appellate court on review. However, as we recognized in
 
 State v. Griffin,
 
 41,946 (La.App.2d Cir.5/2/07), 956 So.2d 199, this court is not required to take such action. The state has not objected to the error and defendant is not prejudiced in any way by the failure to impose the mandatory fíne. Thus, considering the defendant’s apparent indigent status, we decline to remand for correction of the sentence to include a fine for the conviction of felon in possession of a firearm.
 
 [1]
 

 However, with respect to the conviction of distribution of methamphetamine, because the district court incorrectly believed that the statute required defendant to serve at least five years of the sentence without benefit of probation or suspension of sentence, we must vacate the sentence and remand for resentencing. The penalty for the offense of distribution of methamphetamine is imprisonment at hard labor for not less than 2 years nor more than 30 years and a possible fine of not more than $50,000. LSA-R.S. 40:967(B). There is no requirement that any portion of the sentence be served without benefits.
 

 In this case, the district court stated that the applicable sentencing range was imprisonment at hard labor for not less than 5 years nor more than 50 years, with at least 5 years of the sentence to be served without benefit of probation or suspension of sentence. The court then sentenced defendant “to serve 15 years at hard labor without benefit of probation or suspension of sentence.” A sentence founded on an incorrect view of the [ t7law should be set aside.
 
 State v.Spruell,
 
 403 So.2d 63 (La.1981);
 
 State v. Dewhirst,
 
 527 So.2d 475 (La.App. 5th Cir.1988). Accordingly, we vacate the sentence imposed for distribution of methamphetamine and remand for resentencing consistent with the statute of conviction and the guidelines of LSA-C.Cr.P. art. 894.1.
 

 CONCLUSION
 

 For the foregoing reasons, the defendant’s convictions and the sentence im
 
 *441
 
 posed for the offense of illegal possession of a firearm by a convicted felon are affirmed. The sentence imposed for distribution of methamphetamine is vacated and the case is remanded for resentencing.
 

 CONVICTIONS AFFIRMED; SENTENCE FOR POSSESSION OF A FIREARM BY A CONVICTED FELON AFFIRMED; SENTENCE FOR DISTRIBUTION OF METHAMPHETAMINE VACATED AND REMANDED FOR RESENTENCING.
 

 [1]
 

 . The record shows that this defendant is indigent. At the trial level, he was certified as eligible for indigent defender services and on appeal, he was represented by the Louisiana Appellate Project, circumstances indicating his indigent status.
 
 See State v. Chatman, supra.