Judgment rendered July 17, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,482-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

BILLY RAY FORD, JR.                         Appellant

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 233,471-A

Honorable R. Lane Pittard, Judge

* * * * *

LESLIE W. KELLY                             Counsel for Appellant


J. SCHUYLER MARVIN                          Counsel for Appellee
District Attorney

RICHARD R. RAY
JESSICA G. DAVIS
Assistant District Attorneys

* * * * *


Before PITMAN, STONE, and HUNTER, JJ.

**PITMAN, C. J.**

Defendant Billy Ray Ford, Jr. appeals his conviction by a six-person jury of sexual battery. For the following reasons, we affirm.

## FACTS

In December 2019, Defendant was charged with three counts of molestation of a juvenile, a violation of La. R.S. 14:81.2(A)(1) and (B)(2). The victim of Counts 1 and 2 was H.R., whose date of birth is January 25, 2005, and who was 14 years old at the time of the alleged violations, which occurred on or about March 1, 2019, and June 1, 2019, respectively. Count 3 was alleged to have occurred between January 1, 2003, and December 31, 2007, and the victim was S.R., date of birth February 3, 1990, who was between the ages of 13 and 17 when the alleged violations occurred.

An amended bill of information reduced Count 1 to a violation of La. R.S. 14:43.1(A)(2), sexual battery, and alleged that on or about July 14, 2019, Defendant, being a person over the age of 17, having a date of birth of September 1, 1977, did commit sexual battery upon H.R., date of birth January 25, 2005, who was under the age of 15 and at least 3 years younger than the offender. This was the only charge heard by the jury in this case.

Prior to commencement of the jury selection, discussions were had with counsel of record and the trial court to whom the case had been assigned regarding the charges against Defendant. The original charges included one count of molestation of a juvenile, which would have required a 12-person jury to be chosen. The judge became ill later that day, and a substitute took over the case. The jury trial continued that day with the new judge presiding over the charge of one count of sexual battery. It was not

until jury selection had already begun that the trial court noticed that only a 6-person jury was needed. When this was discovered, both the state and defense had each already utilized seven peremptory challenges, and defense counsel had informed the trial court that he did not intend to use any strikebacks. The trial court impaneled the first 6 jurors chosen plus an alternate as selected in chronological order. Defendant's attorney objected to this procedure, which was noted for the record. Trial began on September 26, 2022.

Officer Cassie Marr of the Bossier City Police Department testified that in August 2019 she was contacted by Laterrica "Nikki" Reddix Davis, mother of the victim H.R., and her husband, Kevin Davis, H.R.'s stepfather, regarding an alleged sexual battery. They reported that a family member had been having sexual intercourse with H.R., who was 14 years old. H.R.'s and Defendant's dates of birth were established.

Ofc. Marr testified that she spoke to H.R., who told her that there had been several incidents of oral sex and that vaginal intercourse occurred at least twice; the last incident of vaginal sex occurred in July 2019. H.R. reported that Defendant put his penis in her vagina even though she told him to stop multiple times, that he covered her mouth with his hands and told her that if she told anyone, he would "come back on her parents because he had things on them."

On cross-examination, Ofc. Marr confirmed that H.R. had admitted or suggested that she sent inappropriate pictures to Defendant. However, H.R. no longer had these pictures on her telephone.

Kevin Davis, H.R.'s stepfather, testified regarding family relationships and stated that H.R.'s grandmother is Andrea Reddix Smith

2

(Nikki's mother) and her step-grandfather is Patrick Smith (Andrea's husband), who is Defendant's brother. He testified that Andrea and Patrick live in Bossier City and that H.R. visited them in the summer of 2019. He stated that neither he nor his wife was aware of any wrongdoing at Andrea's house until H.R. told her mother that Defendant was molesting her. He stated that since the incident was reported in August 2019, H.R. has been suffering psychologically; and, in fact, the entire family has been undergoing therapy.

Detective Matthew Camp, Bossier City Police Department, testified that he attended a recorded interview with H.R. at the Gingerbread House. He obtained a copy of the DVD, and it was played at trial.

Det. Camp further testified that T'Neal Reddix (H.R.'s aunt and Andrea's daughter) contacted him and told him that she had also been abused by Defendant when she was 13 years old. She told him that the abuse began with touching, then oral sex and then penetration. She also told him that she tried to tell her mother about the abuse but that her mother was more concerned about the family's reputation.

H.R. testified and identified Defendant as "Uncle Bill." She also identified a picture of her grandparents' house in Bossier. She stated that she was often at their house during the summer of 2019. She testified that she had oral sex with Defendant three times when she was 14 years old, the last time in June 2019, on Father's Day. The activity escalated to vaginal sex after that, which occurred three times, the last time being in August 2019. She stated that shortly before school was to begin, her mother, Nikki, discovered that she had a phone she was not supposed to have and that there were nude pictures on the phone of herself that she had sent to Defendant at

his insistence. She confessed to Nikki that Defendant had been having sex with her, and Nikki immediately called the police.

H.R. described an incident of vaginal intercourse when Defendant forced her to have sex with him in his room. She testified regarding other encounters and sexual abuse by Defendant at different times and in different places and stated that he threatened her not to tell anyone.

T'Neal testified that she is H.R.'s aunt and that she was born in February 1990. She identified Defendant and testified that she was also molested by Defendant from 2003 to 2007 and that they were having sexual intercourse. It began when she was 13 and Defendant was 27. She performed oral sex and had vaginal sex with him. She told her mother, Andrea, and stepfather what was happening, and her mother accused her of lying. She stated that her mother told her that telling lies like that would result in somebody "sitting underneath the jail."

On cross-examination, T'Neal testified that she and Kimberly Davenport (Patrick Smith's biological daughter) both went to Andrea and Patrick to tell them Defendant had sexually abused them. She stated that she thought Kimberly had also been Defendant's victim, but when they went to T'Neal's parents, Kimberly claimed she had never been assaulted.

T'Neal further testified that in February 2008, she moved to Van Nuys, California, to get away from the family situation. Defendant's attorney attempted to introduce a letter she had written in an attempt to impeach her testimony. The letter supposedly indicates that T'Neal left Louisiana for other reasons. The district attorney ("DA") objected to the letter as inadmissible hearsay and claimed that the defense attorney had never revealed this letter in discovery even though it had been requested.

The trial court asked to see the letter, read it and then sustained the objection. The defense attorney did not note his objection to the ruling on the record. The state rested its case.

The defense called Kimberly Davenport, who testified that she has known the Reddixes since 2001 and that she and T'Neal are only a year apart in age. She stated that she and T'Neal are stepsisters (she is Patrick Smith's daughter and Defendant's niece) and that they used to have a close relationship. However, she testified that T'Neal never told her she was being sexually assaulted by Defendant and that she (Kimberly) had never been assaulted by him. She also testified that she did not believe he would have been capable of such an act.

On cross-examination, Kimberly revealed that she had seen T'Neal outside the courtroom the day before. The DA asked if Kimberly was aware that T'Neal was testifying that she had sexual contact with Defendant from 2003 to 2007 and Kimberly answered, "Yes, my dad told me, and Andrea told me." The DA asked, "Andrea told you?" She answered, "Yeah, they told me yesterday. They told me about the accusations that was going on with T'Neal, that she supposed to said that he was messing with her from 2003 to 2007."

Prior to her dismissal from the stand, the trial court admonished Kimberly not to speak to anybody else about the case and asked if she had been there for the rule of sequestration. She said she had been there, and the judge verified that she had been told not to speak to anybody during the trial. The judge asked her whether she had been speaking to witnesses, and Kimberly admitted that outside the courtroom, she had been speaking with

Andrea. She stated that she had only been told not to speak to T'Neal or Nikki, but nobody told her not to speak to Andrea or Patrick.

Andrea was the next person called by the defense. However, before she took the stand, the trial court raised the issue of whether Andrea had been present when the sequestration had been ordered, and the defense attorney said, "That's not my province to . . . order sequestration on witnesses." The trial court stated that it had placed the witness under sequestration. The defense attorney tried to excuse the witness by saying, "These are lay people. Okay. So, they don't quite understand the perimeters (*sic*) of the sequestration order." The trial court noted that he had made it very clear to them that they were not to discuss this matter with anybody else, especially witnesses. It stated, "It's been made very clear to me, that Ms. Reddix has violated that sequestration order by speaking with Ms. Davenport and ---wait, let me. . . finish--I find that to be. . . an egregious action against the protection of what the order of sequestration is intended to do." He noted that there had been direct discussion between the two individuals about the testimony offered at trial.

The trial court stated that it was within its power to sanction anyone who violated the order of sequestration to correct the wrong done and that power ranged from sanctions or instructions to the jury or exclusion as a witness altogether. It asked if the attorney still intended to call Andrea to the stand, and the attorney said he wanted to discuss the contemplated sanctions. It stated that the sanctions would result if he called her to the stand; but if the defense did call her, the judge expected the DA to ask that she be excluded, or that a special instruction be given to the jury or that he sanction her. It also stated that it was not suggesting he not call the witness

6

but left that decision to the attorney. A long discussion ensued in which the trial court stated it did not want to harm Defendant's case but that the violation of the order of sequestration was very serious. At the very least, it would have to instruct the jury that Andrea and Kimberly had violated the order and discussed testimony that was given and yet to be given. It allowed the attorney and his client time to discuss the strategy of whether to call Andrea to the stand. After the break, the defense attorney decided not to call Andrea and stated he would call Defendant as the next witness.

Defendant took the stand and testified that nothing ever happened between him and H.R. and that H.R. was "fond" of his girlfriend's (Sonya) son, Nigel. He continued to deny any of the specific incidents alleged against him.

The jury of six people unanimously found him guilty as charged. There were other charges still pending in the case, but the trial court stated that those matters would be heard by the original judge assigned to the case. The trial court ordered a presentence investigation to be completed by the sentencing date.

Defendant filed his first motion for new trial on November 21, 2022, and it was denied by the original judge on January 30, 2023. On February 22, 2023, Defendant filed a motion for appeal and a return date was set for May 2023.[1] Sentencing was set for March 8, 2023, at which time Defendant was sentenced to the maximum sentence under the statute of ten years at hard labor. The trial court did not state during sentencing that Defendant's sentence was to be imposed without benefits pursuant to the

---

[1] This appeal was filed prematurely.

7

statute. Neither the district court minutes nor the commitment order restricted benefits.

On March 10, 2023, two days after sentencing, Defendant filed another motion for appeal. On April 17, 2023, Defendant filed a second motion for new trial, alleging that new evidence had been discovered in the form of an affidavit from the victim recanting her testimony at trial and claiming that no sexual battery took place.

Although the trial court set the second motion for new trial for hearing, the hearing was deferred because of the already pending appeal and the divestiture of the trial court of jurisdiction. Defendant filed a motion in this court and asked it to remand so that a hearing on the new trial motion could be held. This court issued an order on September 26, 2023, remanding the matter. A hearing was set for December 13, 2023.

The original trial judge died on December 12, 2023, the day before the hearing. The substitute judge who had presided over the trial held the hearing on the motion for new trial.

The trial court heard testimony and received evidence in the form of an affidavit in which H.R. recanted the allegations against Defendant. Her grandparents testified regarding the affidavit and stated that they own a bail bond company and had bailed out H.R. after she allegedly committed a battery at Burger King. They allowed her to stay in their home for a few days. While they had her at their house with no transportation, they offered to give her a ride to Burger King to pick up her check. However, they took her instead to Defendant's attorney's office where she was presented with an affidavit recanting her claims against Defendant. They testified that H.R.'s

8

statements in the affidavit were voluntarily given and that she signed in the presence of the notary.

H.R. was subpoenaed to appear at the hearing on the new trial and was asked if she signed the affidavit willingly. She responded that she had not. She stated that she was taken to the lawyer's office under false pretenses and presented with the affidavit. It was notarized outside of her presence. She testified that she had been ridiculed and threatened to sign the affidavit and that she only signed it because she was irritated and wanted to leave.

H.R. further stated that she had recorded the encounter at the attorney's office on her cell phone. She testified that she began recording as soon as she and her grandmother entered the attorney's office. The phone was in her pocket, but she took it out and placed it on the table. The audio recording was sent to the DA who asked to play the recording in its entirety as impeachment evidence of the grandparents' prior testimony that they had not tried to influence H.R.'s decision to recant her trial testimony. Defendant's attorney objected, stating he had never been told about the recording, had never heard it and had never been given the opportunity to review it. H.R. identified and authenticated the audio recording as the one she made on the date in question. It was introduced in evidence.

When questioned by the state's attorney, H.R. testified that Defendant's attorney did not pressure her to sign the affidavit and that he attempted to articulate statements he believed she intended to convey. However, she stated that the only reason she signed the affidavit was because "I knew if I didn't confide (*sic*) to the letter, they was not gonna let

9

me out of the room, and I was ready to go." She also testified that her testimony at Defendant's trial was truthful and that the affidavit was not.

The trial court determined that the recantation was without merit and for that reason denied the motion for new trial. The matter was returned to this court, and the instant appeal of the September 29, 2022 conviction resumed.

## DISCUSSION

### Jury Selection

Defendant argues that the jury selection process began with the goal of empaneling 12 jurors; but during *voir dire*, the trial court was alerted that the offense charged, sexual battery, was triable before a jury of 6. He argues that the trial court responded by empaneling 6 jurors who had been on the provisional panel the longest, thus, based on seniority, but prior to the close of *voir dire*. Defendant claims he objected contemporaneously to the "faulty selection process."

Defendant also argues that the trial court denied him the full opportunity of examination of the provisional jurors, which included two African Americans. He contends he was prevented from exercising all of his remaining peremptory challenges resulting in the arbitrary exclusion of a particular group of individuals. For that reason, he claims none of the jurors were selected according to law.

The state argues that the jury was properly empaneled. Jury selection had begun before everyone realized that it would be tried by a six-person jury. At the point of realization, both the state and defense had utilized seven peremptory challenges, and defense counsel had informed the trial

10

court that he did not intend to use any strikebacks. No challenges for cause had been used by either party.

The state argues that each side had ample opportunity to question all of the potential jurors randomly selected up to that point and that if they had begun jury selection with the intention of selecting six jurors, the same jury would have been empaneled. The state argues that any error in selecting the jury would have been harmless error.

A case in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months shall be tried before a jury of six persons, all of whom must concur to render a verdict. La. Const. art. I, § 17. The accused shall have a right to full *voir dire* examination of prospective jurors and to challenge jurors peremptorily. *Id*. *See also* La. C. Cr. P. art. 782(A).

La. R.S. 14:43.1(C) states whoever commits the crime of sexual battery shall be punished by imprisonment, with or without hard labor, without benefit of parole, probation or suspension of sentence, for not more than ten years. Therefore, because confinement at hard labor was a possibility in this case, and was imposed, a jury of six persons was an appropriate number of jurors.

The court, the state, and the defendant shall have the right to examine prospective jurors. La. C. Cr. P. art. 786. The scope of the examination shall be within the discretion of the court. *Id*. After the examination provided by article 786, a prospective juror may be tendered first to the state, which shall accept or challenge him. La. C. Cr. P. art. 788. If the state accepts the prospective juror, he shall be tendered to the defendant, who shall accept or challenge him. *Id*. When a prospective juror is accepted by

11

the state and the defendant, he shall be sworn immediately as a juror. *Id.* This article is subject to the provisions of articles 795 and 796. *Id.*

An accused has a constitutionally guaranteed right to peremptorily challenge jurors. *State v. Culp*, 44,270 (La. App. 2 Cir. 7/15/09), 17 So. 3d 429. Peremptory challenges shall be exercised prior to the swearing of the jury panel. La. C. Cr. P. art. 795(B)(1). When a prospective juror is accepted by the state and the defendant, he shall be sworn immediately as a juror, subject to the provisions of La. C. Cr. P. art. 795. La. C. Cr. P. art. 788(A). The Louisiana Supreme Court cited La. C. Cr. P. art. 795(B)(1) in holding that even though a prospective juror is "temporarily" accepted and immediately sworn as juror in accordance with La. C .Cr. P. art. 788, that juror may nevertheless be challenged peremptorily prior to the swearing of the entire jury panel. *State v. Watts*, 579 So. 2d 931 (La. 1991).

Notwithstanding any other provision of law to the contrary, and specifically notwithstanding the provisions of article 788, in the jury selection process, the state and the defendant may exercise all peremptory challenges available to each side, respectively, prior to the full complement of jurors being seated and before being sworn in by the court, and the state or the defendant may exercise any remaining peremptory challenge to one or more of the jurors previously accepted. La. C. Cr. P. art. 799.1.

In this case, both the state and Defendant had exercised all seven peremptory challenges available to them, and Defendant's attorney had informed the court that it did not intend to utilize any strikebacks. Because the jury was appropriately composed of six persons plus one alternate, and none of them who were seated had been challenged, there was no error in the seating of this jury.

This assignment of error is without merit.

*Denial of Letter to be used as Impeachment Evidence*

Defendant argues that T'Neal was called as a state's witness pursuant to La. C.E. art. 412.2, which allows evidence of similar crimes, wrongs or acts in sex offense cases involving a victim who was under the age of 17 at the time of the offense. He asserts that he attempted to impeach the witness's testimony by introduction of a letter she wrote which allegedly showed prior inconsistent statements. The trial court reviewed the letter *in camera* but denied its admission on the basis that it had not been provided to the state, pretrial, despite a discovery request. Defendant contends that this is the sort of evidence that is admissible as non-hearsay evidence that is being offered as a personal admission; and if the evidence is highly reliable and relevant to the accused's defense, it should be admitted to attack the witness's credibility. Although he attempted to have the letter admitted, the trial court refused, and no contemporaneous objection was filed when the trial court sustained the state's objection.

The state argues the trial court correctly sustained its objection to the unauthenticated document. It had not been disclosed prior to trial pursuant to a discovery request, and no foundation had been established to even connect the letter in any way to the witness. The state objected on the grounds of hearsay, relevance and lack of foundation. The state contends that a trial court has much discretion in determining whether the probative value of the relevant evidence is substantially outweighed by its prejudicial effect, and for these reasons, the state argues that the assignment of error lacks merit.

The trial judge's determination regarding the relevancy of offered testimony is entitled to great weight and should not be overturned absent a clear abuse of discretion. *State v. Burrell*, 561 So. 2d 692 (La. 1990); *State v. Wiley*, 513 So. 2d 849 (La. App. 2 Cir.1987), *writ denied*, 522 So. 2d 1092 (La. 1988).

A contemporaneous objection is necessary to preserve an error for appellate review. La. C. Cr. P. art. 841; *State v. Logan*, 36,042 (La. App. 2 Cir. 6/14/02), 822 So. 2d 657, *writ denied*, 02-2174 (La. 9/19/03), 853 So. 2d 621. No contemporaneous objection was made in this case.

This assignment of error is without merit.

*Trial Court's Denial of Introduction*
*of Testimony of Andrea Reddix Smith*

Defendant argues it was error for the trial court to suggest that Andrea Reddix Smith would be subject to contempt of court if she testified because she ignored the order of sequestration and spoke to another witness outside the courtroom. He contends that the more appropriate action for the trial court to take was to have the state establish good cause for the exclusion of the testimony since the excluded testimony was crucial to a defense theory.

The state argues that the defense chose not to have Andrea Reddix Smith testify and that it was not the trial court's error. The trial court only stated that there would be repercussions for the serious violation of the order of sequestration if she testified. After the trial court articulated these possible sanctions, Defendant chose not to put her on the stand. The trial court did not exclude her testimony.

On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a

14

place where they can see or hear the proceedings and refrain from discussing the facts of the case with anyone other than counsel in the case. La. C.E. art. 615(A). In the interests of justice, the court may exempt any witness from its order of exclusion. *Id.* This article does not authorize exclusion of a person whose presence is shown by a party to be essential to the presentation of his cause, such as an expert. La. C.E. art. 615(B)(3). The article also states that it does not authorize the exclusion of the victim of the offense or the family of the victim. La. C.E. art. 615(B)(4).

A court may impose appropriate sanctions for violations of its exclusion order including contempt, appropriate instructions to the jury or when such sanctions are insufficient, disqualification of the witness. La. C.E. art. 615(C).

In this case, the trial court became aware that the order of sequestration had been violated by a defense witness after she spoke to another defense witness outside of the courtroom. The witness happened to be someone who was related to both H.R. and Defendant. The trial court gave defense counsel the option of putting the witness on the stand and facing the imposition of sanctions if he did so. The possible sanctions authorized by La. C.E. art. 615(C) were discussed, and the defense attorney chose not to have the witness testify. There was no action on the part of the trial court which could be described as error.

Thus, this assignment of error is without merit.

*The Motion for New Trial*

Defendant argues that the trial court erred in denying the second motion for new trial based on his claims that the state failed to disclose that H.R. had recently been arrested for the crime of communicating false

15

information of planned arson and that the DA had offered her the opportunity for diversion on a charge that exposed her to a year at hard labor. He contends that tacit agreements between the state and its witness must be disclosed under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), in which it was held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

He also claimed that it was error for the trial court to allow the introduction of the audio tape made by H.R. at the attorney's office when she was taken there to sign the affidavit recanting her testimony at trial. Defendant claims he was unaware that the audio was being made and it was never disclosed to the attorney prior to the hearing on the motion for new trial. Defendant also objected to the audio tape being used for the purpose of impeaching the credibility of the state's own witness, H.R.

Defendant argued that H.R. executed a post-trial affidavit exculpating him of any sexual impropriety. He argues that it was not the trial court's duty to weigh the new evidence as though it was a jury determining guilt or innocence; rather, it was required to consider the evidence in light of the totality of evidence and decide whether a different result than the verdict reached would have been rendered.

The state argues that the issues raised by Defendant in the motion for new trial, and the trial court's decision to deny the motion for new trial, are not appropriately addressed in the appeal of the Defendant's conviction.

The motion for a new trial is based on the supposition that injustice has been done to the defendant; and, unless such is shown to have been the

16

case, the motion shall be denied, no matter upon what allegations it is grounded. La. C. Cr. P. art. 851(A).

A motion for a new trial shall be in writing, shall state the grounds upon which it is based and shall be tried contradictorily with the district attorney. La. C. Cr. P. art. 852.

In order to obtain a new trial based on "newly discovered evidence," the defendant has the burden of showing that (1) the new evidence was discovered after trial, (2) the failure to discover the evidence at the time of the trial was not caused by lack of diligence, (3) the evidence is material to the issues at trial, and (4) the evidence is of such a nature that it would probably have produced a different verdict. La. C. Cr. P. arts. 851(B); La. C. Cr. P. art. 854; *State v. Bell*, 09-0199 (La. 11/30/10), 53 So. 3d 437, *cert. denied*, 564 U.S. 1025, 131 S. Ct. 3035, 180 L. Ed. 2d 856 (2011); *State v. Tubbs*, 52,417 (La. App. 2 Cir. 11/20/19), 285 So. 3d 536, *writ denied*, 20-00307 (La. 7/31/20), 300 So. 3d 404, *on reconsideration*, 20-00307 (La. 9/8/20), 301 So. 3d 30, and *writ denied*, 20-00307 (La. 9/8/20), 301 So. 3d 30.

A ruling on a motion for new trial rests within the sound discretion of the trial judge. *State v. Brisban*, 00-3437 (La. 2/26/02), 809 So. 2d 923. In ruling on the motion, the trial judge's duty is not to weigh the new evidence as though he were a jury determining guilt or innocence; rather, his duty is the narrow one of ascertaining whether there is new material fit for a new jury's judgment. *State v. Brisban*, *supra*; *State v. Tubbs*, *supra*.

The denial of a motion for new trial is not subject to appellate review except for error of law. La. C. Cr. P. art. 858; *State v. Horne*, 28,327 (La. App. 2 Cir. 8/21/96), 679 So. 2d 953, *writ denied*, 96-2345 (La. 2/21/97),

688 So. 2d 521. The decision on a motion for new trial rests within the sound discretion of the trial court. *Id.* The appellate court will not disturb this ruling on appeal absent a clear showing of abuse. *Id.* Generally, a motion for new trial will be denied unless injustice has been done, no matter on what allegations it is grounded. *State v. Dowden*, 41,939 (La. App. 2 Cir. 3/28/07), 954 So. 2d 300, *writ denied*, 07-0909 (La. 11/9/07), 967 So. 2d 501.

We find no error in the ruling of the trial court denying the motion for new trial in this case. These assignments of error are without merit.

## ERROR PATENT

La. R.S. 14:43.1(C)(1) states:

> Whoever commits the crime of sexual battery shall be punished by imprisonment, with or without hard labor, without benefit of parole, probation, or suspension of sentence, for not more than ten years.

We note that in this case, the trial court sentenced Defendant to ten years at hard labor, but failed to include that the sentence was to be served without benefit of parole, probation or suspension of sentence. An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. La. C. Cr. P. art. 882; *State v. Simmons*, 47,857 (La. App. 2 Cir. 5/15/13), 114 So. 3d 535. Therefore, Defendant's sentence is hereby amended to reflect that it will be served without benefit of parole, probation or suspension of sentence.

## CONCLUSION

The conviction and sentence of Billy Ray Ford, Jr. are hereby affirmed, and his sentence is corrected to reflect that the ten years at hard

18

labor are to be served without benefit of parole, probation or suspension of sentence.

**AFFIRMED; SENTENCE CORRECTED**.