LOLLEY, J.
 

 11
 
 This criminal appeal arises from the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana, where a jury found the defendant, Christopher McCoy, guilty of possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1, and aggravated assault with a firearm, a violation of La. R.S. 14:37.4. McCoy was sentenced to 15 years’ imprisonment at hard labor without benefit of parole and 5 years’ imprisonment at hard labor, respectively, to be served concurrently. For the following reasons we affirm the convictions and sentences.
 

 FACTS
 

 On the evening of July 8, 2007, at a local nightclub in Monroe, Louisiana, an altercation developed between McCoy, the defendant, and Alan Coleman, the nightclub owner. McCoy accused Alan of taking money from McCoy’s girlfriend and demanded the money be returned to him or applied to his bar tab. Alan explained to McCoy that the money had been given to
 
 *1147
 
 him to satisfy the girlfriend’s bar tab. The argument ended without the money being returned and McCoy eventually left.
 

 After it had closed, McCoy returned to the nightclub. Alan Coleman had already left; however, there were people congregating in the parking lot of the club including Freddie Coleman, Alan’s brother. McCoy asked for Alan but instead Freddie walked toward McCoy. After a few words, McCoy pulled a handgun and fired a shot near Freddie’s head. McCoy walked away. Freddie ran to a friend’s house and called 9-1-1. When officers arrived, witnesses gave a description of the defendant as a black male wearing camouflage clothing. An officer, responding to the call, |2spotted McCoy walking in the area. McCoy was stopped and eventually arrested. Officers searched the area where McCoy had been seen walking and found a gun in the grass. The weapon contained a spent cartridge.
 

 A jury found McCoy, a convicted felon, guilty of aggravated assault with a firearm and possession of a firearm by a convicted felon. Thereafter, McCoy was sentenced to 5 years’ imprisonment at hard labor for aggravated assault and 15 years’ imprisonment at hard labor without benefit for possession of a firearm by a convicted felon. McCoy now appeals.
 

 LAW AND DISCUSSION
 

 In his first assignment of error, McCoy argues that the state presented insufficient evidence to convict him of the charged offenses. McCoy argues that the state’s witnesses were not credible. McCoy also argues that the state failed to prove that McCoy had actual or constructive possession of the firearm or that he discharged a firearm.
 

 The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979);
 
 State v. Tate,
 
 2001-1658 (La.05/20/03), 851 So.2d 921,
 
 cert. denied,
 
 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004);
 
 State v. Carter,
 
 42,894 (La.App.2d Cir.01/09/08), 974 So.2d 181,
 
 writ denied,
 
 2008-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to ¡^substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 2005-0477 (La.02/22/06), 922 So.2d 517;
 
 State v. Dotie,
 
 43,819 (La. App.2d Cir.01/14/09), 1 So.3d 833,
 
 writ denied,
 
 2009-0310 (La.11/06/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 1994-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Eason,
 
 43,788 (La.App.2d Cir.02/25/09), 3 So.3d 685;
 
 writ denied,
 
 2009-0725 (La.12/11/09), 23 So.3d 913.
 

 The
 
 Jackson
 
 standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime.
 
 State v. Sutton,
 
 436 So.2d 471 (La.1983);
 
 State v. Speed,
 
 43,786 (La.
 
 *1148
 
 App.2d Cir.01/14/09), 2 So.3d 582,
 
 writ denied,
 
 2009-0372 (La.11/06/09), 21 So.3d 299.
 

 In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State v. Burd,
 
 40,480 (La.App.2d Cir.01/27/06), 921 So.2d 219,
 
 writ denied,
 
 2006-1083 (La.11/09/06), 941 So.2d 35.
 

 The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law.
 
 State v. Casey,
 
 1999-0023 (La.01/26/00), 775 So.2d 1022,
 
 cert. denied,
 
 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
 

 To support a conviction of possession of a firearm by a convicted felon, the state must prove: (1) the possession of a firearm; (2) a previous conviction of an enumerated felony; (3) absence of the ten-year statutory period of limitation; and, (4) general intent to commit the offense. La. R.S. 14:95.1;
 
 State v. Husband,
 
 437 So.2d 269 (La.1983);
 
 State v. Robert,
 
 42,036 (La.App.2d Cir.05/09/07), 956 So.2d 750.
 

 Louisiana R.S. 14:37.4 provides:
 

 A. Aggravated assault with a firearm is an assault committed by the discharge of a firearm.
 

 B. For the purposes of this Section, “firearm” is defined as an instrument used in the propulsion of shot, shell, or bullets by the action of gunpowder exploded within it.
 

 An assault is “an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery.” La. R.S. 14:36.
 

 In the instant case, Alan Coleman testified he owned the nightclub and he was working at the club on the night of July 8, 2007. Alan recalled seeing McCoy in the club and having “a few words” with him about $10.00 McCoy’s girlfriend owed him for a pint of liquor she ordered earlier in the | r,evening. Despite not receiving the money, Alan believed the situation had ended. Freddie Coleman, Alan’s brother and the victim, testified he was at his brother’s club at closing time when he saw McCoy outside the club. Freddie stated McCoy was in the parking lot, “he come up and he was sort of mad and he was arguing like. I didn’t say nothing to him.” Freddie responded, “I’m 49 years old. I’m grown.” At this point, Freddie recalled that McCoy pulled a gun out of his jacket and fired a shot near his head. McCoy walked away and Freddie ran to a friend’s house and called the police. Freddie testified McCoy was wearing army fatigues (camouflage) at the time of the shooting. On cross-examination, Freddie stated he did not see the gun McCoy was holding, but he heard it and he knew that it was the sound of a gun being fired.
 

 Alice Frazier, another witness, testified she was at the club on the night of the incident. Frazier stated McCoy was wearing pants and a shirt when he was in the club, but when he returned he was wearing camouflage clothing. According to Frazier, McCoy walked toward a group of people sitting outside the club after it closed and produced a gun and asked, “Where is he?” When Freddie walked up, Frazier related that McCoy said words to the effect of “you’re going to take up for your brother,” and then hit the victim in the head with the gun. Frazier testified that she did not see McCoy shoot the gun but she did remember sparks coming from the gun when the victim was hit. Frazier testified that she knew McCoy’s girlfriend
 
 *1149
 
 owed Alan money, but she did not know why the debt was owed.
 

 IfiPaul Harper, a lieutenant with the Monroe Police Department, testified he was on patrol on the morning of the incident and was responding to the call when he saw a person fitting the description of the suspect-black male wearing camouflage clothing. Lieutenant Harper requested backup and tracked McCoy until another officer arrived. Once another officer arrived, McCoy was stopped and searched; however, no gun was recovered from his person. McCoy had traveled a distance from the point where Lt. Harper first saw him so the officers went back to search the area. They located a gun lying in the grass near the sidewalk where McCoy was initially spotted by Lt. Harper who testified that he did not see anyone else in the area where the gun was located. Lieutenant Harper further testified he did not see McCoy drop the gun.
 

 Officer Gregory Bauer, of the Monroe Police Department, testified he was working on July 8, 2007, when he was dispatched on a call of shots fired. The suspect was described as a black male wearing camouflage. When Off. Bauer arrived on the scene, McCoy had already been stopped by other officers, including Lt. Harper, so Bauer assisted in placing McCoy in handcuffs. Officer Bauer advised McCoy of his rights and conducted a pat-down search for weapons before placing McCoy in a police unit. Officer Bauer explained that they were unable to fingerprint the gun they found because it was wet when recovered from the grass; however, one spent round was found in the weapon. After securing the gun in his patrol unit, Off. Bauer searched McCoy again and this time found three knives, a flashlight, and a ski mask on McCoy’s person.
 

 17Peputy Jim Gregory of the Ouachita Parish Sheriffs Office was qualified as an expert in the area of fingerprint analysis by the court. Deputy Gregory testified that he examined the fingerprints from the bill of information of a November 5, 1990 purse snatching incident involving McCoy against fingerprints taken when he was arrested for the instant offense. Gregory opined that the fingerprints were from the same person.
 

 McCoy testified on his own behalf, against his attorney’s advice and after being advised of his rights by the trial judge. McCoy testified to having prior convictions for purse snatching and two counts of attempted simple burglary. McCoy indicated he knew that as a felon he was not supposed to own a gun and that he did not own one. McCoy testified he had given his girlfriend some money and when he arrived at the club, she told him that Alan had taken the money from her. McCoy stated he confronted Alan about the money and they argued about it but “nothing happened.”
 

 McCoy testified he did not have a gun that night. McCoy indicated the only reason he had an argument with Freddie was because Freddie confronted him outside the club. McCoy denied hitting the victim or shooting at him. After the argument, McCoy stated that he left the area. McCoy explained that he was walking home when he saw an unmarked police unit traveling in the opposite direction. He was aware the officer was watching him, but he did not attempt to run. McCoy said the officer watched him as he walked for about four blocks during which time he smoked a cigarette. McCoy repeatedly denied having a gun or throwing a gun in the grass. On cross-examination, when asked how he was dressed on |Rthe evening of the incident, McCoy stated he “had on an authentic army suit with two patches on the arms.... Dirty camo,
 
 *1150
 
 brown camouflage, and true camouflage.” McCoy explained that the ski mask was a part of his attire, and that he was carrying the knives with him for protection.
 

 After a review of the record, we find that there was sufficient evidence to convict McCoy of the charged offenses. To convict McCoy of aggravated assault with a firearm, the state had to prove that the defendant made an attempt to commit a battery, or intentionally placed the victim in reasonable apprehension of receiving a battery by the discharge of a firearm. Through the testimony of its witnesses, the state was able to prove that McCoy was involved in an argument with Alan Coleman. After leaving the club, McCoy returned, dressed in camouflage type of clothing, and confronted Freddie Coleman in the parking lot of the club. McCoy then pulled a gun and discharged it near Freddie Coleman’s head. The victim testified he ran away after hearing the gunshot. The testimony of the witnesses was sufficient to establish all elements of the offense. While some of the testimony may have been inconsistent, and McCoy denied changing his clothes or possessing a gun, the trier of fact was charged to make a credibility determination and accept or reject the testimony of any witness. Here, the jury chose to believe the other witnesses rather than the defendant who denied committing the crimes. Based on the record, we find no reasons to impinge on the jury’s discretion to decide the credibility of the witnesses.
 

 | ^Further, the state presented sufficient evidence through the testimony of Freddie Coleman, Alice Frazier and the police officers to prove McCoy’s possession of the gun. Freddie Coleman testified McCoy fired a gun near his head. While Freddie Coleman did not see the weapon, he indicated he knew the sound of a gun being fired. Alice Frazier testified she saw a gun in McCoy’s hand. Officers Harper and Bauer both testified they arrived on or near the scene of the shooting shortly after receiving the call of shots being fired. McCoy, who matched the description of the suspect, was walking in the area of the crime and was observed near where the gun was found shortly before he was detained. Officer Harper, who was the first officer to locate McCoy, testified that he did not see any other individuals in the area at that time. Despite the fact that the officers did not see McCoy with the weapon, the state presented sufficient evidence for the jury to conclude that McCoy possessed the weapon.
 

 The state also presented sufficient evidence to convict McCoy of possession of a firearm by a convicted felon. The state was able to prove that the defendant did in fact possess the weapon and that he discharged near the victim’s head, evidencing his intent to possess the weapon. The state also proved, and McCoy admitted, that he had a prior conviction for purse snatching, one of the enumerated felony offenses. The minute entry, admitted into evidence, from McCoy’s sentencing for purse snatching shows that McCoy was sentenced to 12 years at hard labor on May 9, 1991. Considering this evidence and viewed in the light most favorable to the | mprosecution, it is sufficient to convict the defendant of the charged offense. This assignment of error is without merit.
 

 In his second assignment of error, McCoy believes that the trial record is “replete with numerous instances where trial counsel could be deemed ineffective.” McCoy contends trial counsel failed to subpoena Johnny Graham to testify as requested by him. McCoy further contends trial counsel failed to investigate and ascertain the identity of the person seen walking with McCoy on the night of the shooting. McCoy also argues that trial counsel failed to subpoena Officer Copes who spoke with the victim, Freddie Cole
 
 *1151
 
 man, after the incident. Additionally, McCoy argues that trial counsel, without a rational explanation, used O.J. Simpson as an example several times during
 
 voir dire.
 

 As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief (“PCR”) in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentia-ry hearing under La. C. Cr. P. art. 930.
 
 State ex rel. Bailey v. City of West Monroe,
 
 418 So.2d 570 (La.1982);
 
 State v. Ellis, 42,520
 
 (La.App.2d Cir.09/26/07), 966 So.2d 139,
 
 writ denied,
 
 2007-2190 (La.04/04/08), 978 So.2d 325. Only when the record discloses sufficient evidence to decide the issue should the issue be addressed on appeal.
 
 State v. Seiss,
 
 428 So.2d 444 (La.1983).
 

 After a review of the record, we find that it is insufficient to discuss McCoy’s claims of ineffective assistance of counsel at this time. McCoy has raised issues regarding witnesses that were not called for trial as well as concerns during voir dire. Decisions may have been a result of the trial L, strategy employed by the defense attorney; however, since we cannot determine this based on the record before us, we defer the claims of ineffective assistance of counsel to post-conviction relief where it can be fully developed.
 

 CONCLUSION
 

 For the foregoing reasons, defendant’s convictions and sentences are affirmed.
 

 AFFIRMED.
 

 APPLICATION FOR REHEARING
 

 Before STEWART, GASKINS, DREW, MOORE and LOLLEY, JJ.
 

 Rehearing denied.