CARAWAY, J.
|¶ Defendant, Jason Christopher Turner (“Turner”), having previously pled guilty to aggravated battery, was found guilty of possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1. Turner was sentenced to 13 years at hard labor, without the benefit of parole, probation or suspension of sentence. For the following reasons, Turner’s conviction and sentence are affirmed.
Facts
In the early morning hours of July 1, 2008, Rosetta Banks (“Rosetta”) received a phone call from her daughter, Litisha Banks (“Litisha”). Litisha requested that her mother come over to her house because her boyfriend at the time, Turner, “had [a] gun on her all night.” Litisha sounded both upset and afraid during the conversation. Rosetta, along with her other daughter, LaToya Banks, drove immediately over to Litisha’s house. Upon arrival, Rosetta instructed LaToya to go and knock on the front door and get Litisha to come outside. Meanwhile, Rosetta made a 911 call on her cell phone.
Monroe police officers were dispatched to Litisha’s home in response to the 911 call. The call came in as a domestic, aggravated assault complaint and police were warned that the suspect was likely armed with a gun. Officers Casey Hodge, Michael Freeman, and Michael Plummer responded to the scene, all arriving around the same time, approximately 5:49 a.m. When they arrived, both Rosetta and Liti-sha were waiting outside the home. Corporal Casey Baker, of the Monroe Police Department Special Response Team, arrived at the scene shortly thereafter.
| gOfficer Hodge observed that the victim and her mother were visibly shaken and panicked. Litisha explained to Officer Hodge that Turner had come over to her house after she ended a relationship with him. Litisha, who already had one child with Turner, was six months pregnant with his second child. Litisha told Turner that she no longer wanted to work on their relationship, at which point he began threatening her and eventually pulled a gun from his waistband. Litisha indicated that she saw Turner with the gun, but was unsure whether or not it was actually loaded. Litisha stated that Turner was still in the house, but she did not know what he had done with the gun.
After this brief questioning, the four officers knocked on the front door and announced their presence, but no response was received. Litisha then gave the officers permission to enter her house. With weapons drawn, all four uniformed officers entered the dwelling and found Turner sleeping in a bedroom located in the southwest corner of the home. A cursory search of the bedroom did not reveal any weapons. Turner was placed in handcuffs, advised of his rights and questioned about the incident. Officer Freeman asked Turner where the gun was located and Turner subsequently directed him to the backyard, along the east side of the house. Turner then pointed underneath the house. A Taurus .38 revolver was found lying on the ground by one of the foundation pillars to the house.
A pair of pants was subsequently found on the ground in the bedroom where Turner was found sleeping. Officer Plummer *1212 searched the pants and in one of the pockets, he found six .38 caliber bullets. After the bullets were | .¡recovered, Turner put the pants on to be transported to the police station. Turner, who was previously convicted of aggravated battery on December 17, 1998, was arrested for possession of a firearm by a known felon. On August 28, 2008, Turner was charged by bill of information[1] with one count of possession of a firearm by a convicted felon under La. R.S. 14:95.1.
A jury trial commenced on March 1, 2010, and the testimony of the four responding officers, Rosetta, Litisha, and Turner’s dad, Jason Christopher Turner, III, was received. The Taurus .38 revolver found underneath Litisha’s house was introduced into evidence, along with the six .38 bullets, identified as “special rounds.” After hearing all of the evidence, the jury found Turner guilty as charged. Turner subsequently filed a motion for new trial, which was denied. Turner was sentenced to 13 years at hard labor without benefit of probation, parole or suspension of sentence, with credit for time served. Additionally, he was ordered to pay a fine of $1,000 and court costs.
Turner now appeals his conviction and sentence.

Discussion

I.
In his pro se brief, Turner assigns various errors, essentially claiming that insufficient evidence existed to convict him of possession of a firearm by a convicted felon. Specifically, he argues that he was not possessing the gun because the gun was located in the backyard of Litisha’s house, while Lpolice found him sleeping inside the home. Moreover, he asserts that the gun was handled only by his father and that the pants where the bullets were found belonged to his ex-girlfriend, Litisha.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833, unit denied, 09-0310 (La.11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 09-0725 (La.12/11/09), 23 So.3d 913, cert denied, — U.S. -, 130 S.Ct. *1213 3472, 177 L.Ed.2d 1068 (2010); State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 07-1209 (La.12/14/07), 970 So.2d 529.
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,-032 (La.App.2d Cir.2/13/08), 975 So.2d 753; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 06-1083 (La.11/9/06), 941 So.2d 35.
To support a conviction of possession of a firearm by a convicted felon, the state must prove: (1) the possession of the firearm; (2) a previous conviction of an enumerated felony; (3) absence of the ten-year statutory period of limitation; and (4) general intent to commit the offense. La. R.S. 14:95.1; State v. Husband, 437 So.2d 269 (La.1983); State v. Robert, 42,036 (La.App.2d Cir.5/9/07), 956 So.2d 750; State v. McCoy, 45,090 (La.App.2d Cir.4/14/10), 34 So.3d 1145.
The general intent to commit the offense of possession of a firearm by a convicted felon may be proved through the actual possession of the [ ^firearm or through the constructive possession of the firearm. - State v. Johnson, 03-1228 (La.4/14/04), 870 So.2d 995; State v. Chatman, 43,184 (La.App.2d Cir.4/30/08), 981 So.2d 260. For purposes of the offense of possession of a firearm by a convicted felon, whether the proof is sufficient to establish possession turns on the facts of each case. Further, guilty knowledge may be inferred from the circumstances of the transaction and proved by direct or circumstantial evidence. Id.
Constructive possession of a firearm occurs when the firearm is subject to the defendant’s dominion and control. A defendant’s dominion and control over a weapon constitutes constructive possession even if it is only temporary and even if the control is shared. State v. Bailey, 511 So.2d 1248 (La.App. 2d Cir.1987), writ denied, 519 So.2d 132 (La.1988). Constructive possession entails an element of awareness or knowledge that the firearm is there and the general intent to possess it. State v. Chatman, supra; State v. Culp, 44,270 (La.App.2d Cir.7/15/09), 17 So.3d 429.
It is uncontested that Turner’s previous five-year sentence for aggravated battery, an enumerated felony under La. R.S. 14:95.1, had not yet expired when the present offense was committed.[2]
Rosetta’s tidal testimony was consistent with the above recitation of facts. Relevantly, she admitted that she rushed over to her daughter’s home |7in the early morning hours of July 1, 2008, because her *1214 daughter said that the defendant “had [a] gun on her all night.” She later testified that she regretted calling 911 that evening because the two subsequently resumed a relationship and that this was an isolated incident.
Officer Hodge, the investigating officer, revealed through his testimony that when he arrived, he observed the victim and the victim’s mother outside the house and both seemed panicked, visibly shaken and upset. Litisha told Officer Hodge that she had seen Turner that evening with a gun and that he threatened her with it after she refused to resume a relationship with him. She then indicated that at some point in the evening, she saw Turner walk around the house with the gun, but did not see him come back around to the front of the house with it. Importantly, Officer Hodge was questioned about statements made to him by the defendant:
Q: Did the defendant say anything to you concerning any threatening remarks or gestures he made to Litisha Banks?
A: Yes.
Q: What did he tell you?
A: He admitted to threatening her.
Q: With what?
A: With a gun.
Officer Hodge additionally testified that the .38 revolver recovered at the scene was capable of holding six bullets and that if the six bullets seized by Officer Plummer had been placed into the gun, it would have been|sfully loaded and operative. Although he admitted that he had not personally loaded the ammunition into the revolver’s cylinder, Officer Hodge testified that the six .38 special rounds would have been the proper ammunition for the revolver. Officer Hodge stated that the gun was not registered to the defendant and was not listed as stolen on the National Crime Information Center’s database.
Officer Freeman, who located the gun underneath Litisha’s house, testified that “Mr. Turner told me he specifically put the gun back there. He led me to it, pointed under the house to where it was and told me where it was. Then, I reached under the house and picked it up.” Officer Freeman testified that one would need to search for the gun under the house in order to locate it. Officer Freeman additionally testified that he advised Turner of his Miranda rights before questioning him about the gun’s location. Officer Freeman identified the .38 revolver in open court.
Officer Plummer testified that he searched a pah- of pants that were located beside Turner on the floor when the officers entered the bedroom. The pants, which were searched for officer safety, revealed the six .38 caliber bullets in one of the pockets. After the bullets were recovered, Turner put the pair of pants on so that he could be transported to the police station.
The defense called Litisha to the stand, who testified that Turner did not possess a gun at any point on the date in question and she did not recall telling the police officers that Turner threatened her. She admitted that she was upset with Turner because he refused to leave her house. She further | atestified that she found a gun on the previous day in her backyard. Because she was afraid of guns and concerned her children would find the gun and play with it, she called Turner’s father to take care of it. She stated that his father came over, unloaded the gun and threw it under the house. He then gave the bullets to Litisha who “put them up” in pants pockets in her bedroom. Litisha claimed that the pair of pants belonged to her. Litisha additionally testified that her cousin, Robert Banks, was also at the house during the evening and that he was still present when the police arrived. No other *1215 witness testified to seeing anyone other than the defendant in the house that morning.
Turner’s father, J.C. Turner III, also testified. He stated that he went over to Litisha’s house and unloaded the gun in question, which he believed had only four or five bullets. He surmised that because the house was vacant before Litisha moved in, it is likely that someone was simply storing the gun underneath the house. He was worried that its owner would come back to look for it, so he emptied the bullets and placed the gun under the house so Litisha would not be bothered if someone came back to retrieve it. Turner’s father also testified that he went to the police station on July 2, 2008, the day after his son was arrested to explain that he, and not his son, handled the gun. Additionally, he made a report of similar substance with the district attorney’s office.
From the above evidence, the jury could conclude that Turner possessed a gun on July 1, 2008. In the absence of internal contradiction or irreconcilable conflict with physical evidence, even one witness’s | ^testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Wiltcher, 41,981 (La.App.2d Cir.5/9/07), 956 So.2d 769. Here, the testimony demonstrated that responding officers located a revolver only after the defendant pointed to its exact location. Bullets were located in pants that officers found within close proximity to where the defendant had been sleeping. Moreover, these pants were subsequently worn by the defendant. Furthermore, at the time of the incident, both Litisha and the defendant admitted to officer Hodge that Turner threatened her with a gun. While Litisha and Turner’s father both testified that Turner never possessed a gun on the date in question, the jury chose to believe the testimony of Rosetta and the four officers who responded to the 911 call. This court affords great deference to such a credibility determination. State v. Casey, supra.
Although Turner argues the impossibility of his possessing the firearm because he was found inside the house sleeping, while the gun was located outside and underneath the dwelling, we find that he held constructive possession over the gun. He obviously maintained knowledge of its whereabouts, as he was able to direct Officer Freeman directly to it. His general intent to possess the weapon is evident from his and Litisha’s statements made at the time of the incident, acknowledging that Turner had possession of a gun.
After reviewing the record, we conclude that the physical evidence and the testimony, which was believed by the trier of fact, was sufficient to 11T support the defendant’s conviction of illegal possession of a firearm by a convicted felon. Thus, the assignment of error lacks merit.
II.
The defendant next contends that the trial court erred when it allowed the assistant district attorney personally to publish the subject gun and ammunition to jurors, rather than the bailiff. During the trial, the assistant district attorney asked permission to- “drop one shell .in the magazine” while publishing State’s Exhibit No. 1, the .38 Taurus revolver, to the jury. Defense made an objection which was sustained by the trial court. The jury was then permitted to examine the evidence. One of the jurors then took one of the rounds, also in evidence, and dropped it into the gun’s magazine. The district attorney then described the actions of the juror, as he “examine[d] the gun personally, popped one shell ... in the rotating magazine.” No objection was made by the defense. However, defendant now argues *1216 that through the juror’s actions, evidence was developed that was not adduced through trial testimony and such actions violated his constitutional right to a fair trial.
Louisiana’s contemporaneous objection rule provides “[a]n irregularity or error cannot be availed of after a verdict unless it was objected to at the time of occurrence.” La.C.Cr.P. art. 841(A); State v. Ruiz, 06-1755 (La.4/11/07), 955 So.2d 81; State v. Knott, 05-2252 (La.5/5/06), 928 So.2d 534.
 A defendant’s constitutional due process right of a fair trial by an impartial jury may be violated if the trial jurors are subjected to influences | iawhich cause their verdict to be influenced by circumstances other than evidence adduced at trial. Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965); State v. Marchand, 362 So.2d 1090 (La.1978). In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the “evidence developed” against a defendant come from the witness stand in a public courtroom where there is full judicial protection of the defendant’s right of confrontation, of cross-examination and of counsel. Turner, supra.
The actions of the juror and the subsequent recitation of his actions by the assistant district attorney took place during open court in the presence of defendant and his trial counsel. Although defense counsel objected to the assistant district attorney’s placing of the shell into the magazine, no objection was made to the subsequent actions of the juror or the statements by the assistant district attorney made thereafter. Because no contemporaneous objection was made, defendant is now barred from raising this claim on appeal. La. C.Cr.P. art. 841; State v. Ruiz, supra.
Notwithstanding the defendant’s failure to object, the juror’s actions and the prosecutor’s recital of such were harmless in the instant case. Officer Hodge testified earlier in the trial that the ammunition discovered was the proper ammunition for the subject .38 caliber Taurus revolver. Moreover, defendant’s father testified that he took the ammunition out of the .38 revolver and gave it to Litisha. Defendant has thus failed to demonstrate how the alleged extrinsic evidence tainted the jury’s deliberations. See, State v. Bibb, 626 So.2d 913 (La.App. 5th Cir.1993), writ denied, 93-3127 (La.9/16/94), 642 So.2d 188.
III.
Defendant argues that his 13-year sentence is excessive. He points to the fact that despite several misdemeanor arrests, he has had no “major convictions” over the last ten years. He argues that the goals of punishment and rehabilitation can be accomplished with a less harsh sentence.
La. C.Cr.P. art. 881.1 precludes the defendant from presenting sentencing arguments to the court of appeal that were not presented to the trial court. Here, the defendant did not file a motion to reconsider sentence. In such a circumstance, the defendant is simply relegated to having the appellate court consider the bare claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993); State v. Richie, 44,783 (La.App.2d Cir.10/28/09), 25 So.3d 879, writ denied, 09-2492 (La.4/30/10), 34 So.3d 280.
Whether a sentence imposed is too severe turns on the circumstances of the case and the background of the defendant. A sentence violates La. Const, art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more *1217 than a purposeless and needless infliction of pain and suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La.1/15/02), 805 So.2d 166; 114 State v. Lobato, 603 So.2d 739 (La.1992); State v. Robinson, 40,983 (La.App.2d Cir.1/24/07), 948 So.2d 379; State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
The trial judge is given wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Williams, 03-3514 (La.12/13/04), 893 So.2d 7; State v. Thompson, 02-0333 (La.4/9/03), 842 So.2d 330; State v. Hardy, 39,233 (La.App.2d Cir.1/26/05), 892 So.2d 710.
In sentencing the defendant, the trial court ordered and reviewed a presentence investigation report, as well as consulted relevant provisions of La. C.Cr.P. art. 894.1. The court noted two prior felony convictions, in addition to numerous other arrests and misdemeanor convictions. The court found no mitigating factors and found that the defendant’s threats of violence against his pregnant girlfriend was an aggravating factor. The trial court found there to be an undue risk that the defendant will commit another crime during a period of suspended sentence or probation and that any lesser sentence would deprecate the seriousness of the crime.
Here, the trial judge clearly did not abuse his discretion. The sentencing range, at the time of the offense, for possession of a firearm by a convicted felon was imprisonment at hard labor for not less than 10 years nor more than 15 years without benefit of probation, parole or suspension of sentence, and a fine of not less than $1,000 nor more than $5,000. La. R.S. 11fil4:95.l(B). The defendant received 13 years, a midrange sentence. The sentence imposed does not “shock the sense of justice.”
For the foregoing reasons, Turner’s conviction and sentence are affirmed.
AFFIRMED.

. On March 2, 2010, the bill was amended in open court to correct a typographical error as to the date of the plea to Turner's prior conviction of aggravated battery. The amended bill reflects the accurate date of Turner's prior guilty plea, December 17, 1998.

. During the trial, the state introduced into evidence the bill of information leading to Turner's prior conviction. Corresponding court minutes were also introduced, which evidence Turner’s plea of guilty to aggravated battery, a violation of La. R.S. 14:34. The minutes also indicate that Turner’s initial five-year sentence at hard labor was suspended and he was placed on five years supervised probation. Fingerprints were taken in open court, introduced into evidence and compared to prints located on the bill of information charging Turner with the aggravated battery. This comparison indicated that Turner was the same person convicted of the 1998 crime.