981 So.2d 260 (2008)
STATE of Louisiana, Appellee
v.
Marcus Earl CHATMAN, Appellant.
No. 43,184-KA.
Court of Appeal of Louisiana, Second Circuit.
April 30, 2008.
*264 G. Paul Marx, Lafayette, for Appellant.
Paul J. Carmouche, District Attorney, John F. McWilliams, Jr., Jason T. Brown, Assistant District Attorneys, for Appellee.
Before WILLIAMS, DREW and LOLLEY, JJ.
LOLLEY, J.
This criminal appeal arises from the First Judicial District Court, Parish of Caddo, State of Louisiana. A jury convicted defendant, Marcus Chatman, of possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1. The trial court sentenced him to 15 years at hard labor without benefit of parole, probation, or suspension of sentence. Chatman was given credit for time served, and the trial court ordered that his sentence be served consecutively to any other sentence. Chatman now appeals.

FACTS
On October 1, 2006, Shreveport Police Officer Andre Wilson was on patrol when *265 he saw a red sports car, traveling south on Fairy Avenue, run a stop sign at the intersection with Essex Street. Officer Wilson activated his lights and sirens as he followed the vehicle for three to four blocks. He then observed the vehicle turn left onto Essex Street and park in a residential driveway. Officer Wilson observed a black male, Chatman, get out of the vehicle and begin walking towards the residence, but the officer yelled, "Hey man, don't make me run after you." After being told not to go inside the residence, Chatman walked towards Officer Wilson, who then noticed that Chatman was wearing an orange cast. Officer Wilson realized that a BOLO ("be on the look out") was issued for a black male wearing a red or orange cast on the right arm and driving a red sports car, who was wanted in connection with a shooting that had occurred the day before.
Officer Wilson asked Chatman to stand in front of the patrol unit and asked to see his identification. When Chatman showed his driver's license, which identified him as Marcus Chatman, Officer Wilson knew this was the suspect that was being sought in the BOLO. Officer Wilson then put Chatman in the back of the patrol unit, later explaining at trial that he only did so because he could not handcuff Chatman with his cast on. Officer Wilson asked Chatman if he had proof of insurance, and Chatman told him to look inside the glove compartment. Once inside the vehicle, Officer Wilson claimed he smelled an odor he recognized as being marijuana. Inside the glove compartment, Officer Wilson found a receipt indicating that Chatman had rented the vehicle, which was a red Toyota Solara. After looking inside the glove compartment, Officer Wilson said he was still unclear at to whether Chatman had insurance on the vehicle.
In the meantime, Shreveport Police Office David Bonillas arrived in response to Officer Wilson's request for backup, and he contacted Shreveport Police Detective Rod Johnson. Detective Johnson advised them to impound the vehicle because it had been used in a crime and to bring Chatman to the city jail.
While performing an inventory search of the vehicle, Officer Wilson found a black gym bag inside the trunk. Inside the gym bag, Officer Wilson found a .45 caliber handgun with a laser-light attachment, bullets, marijuana, plastic sandwich bags, and digital scales. Marijuana was also found under the driver's seat. When Detective Johnson spoke to Chatman at the city jail, he initially denied knowing that the firearm was inside the vehicle. After being confronted with the possibility that fingerprint analysis or DNA testing may be done on the weapon, Chatman admitted that he had handled the weapon and that he knew it was in the trunk of the vehicle.
Based upon the events of September 30 (the date of the shooting that Chatman was allegedly involved in) and October 1, 2006, the state originally charged Chatman with aggravated battery, illegal carrying of weapons while in possession of CDS, possession of CDS Schedule I with intent to distribute, and possession of a firearm by a convicted felon. The trial court granted Chatman's motion to sever, and he was tried separately for the instant offense of possession of a firearm by a convicted felon. At trial, Chatman stipulated to having been previously convicted of armed robbery. Subsequently, based upon the evidence presented, the jury unanimously convicted him of possession of a firearm by a convicted felon. This appeal by Chatman ensued.

DISCUSSION

Motion to suppress evidence
In his first assignment of error, Chatman maintains that the trial court erred in *266 denying his motion to suppress the evidence of the firearm found in the trunk of the vehicle, because the search was conducted without a search warrant. Chatman argues that the inventory search exception to the warrant requirement does not apply in the present case, because: it was conducted at the scene of the traffic stop; the state produced no document to prove that an inventory search was conducted; and, no evidence regarding inventory procedures in Caddo Parish was offered. Chatman also argues that this would not have been a lawful search incident to arrest because he was sitting inside the patrol car at the time the search was conducted.
The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Similarly, Article I, § 5 of the Louisiana Constitution also requires a warrant to be obtained before allowing law enforcement to conduct a search or seizure:
Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.
Pursuant to La. C. Cr. P. art. 703(D), the state bears the burden of proving the admissibility of evidence seized without a warrant when the defendant files a motion to suppress. State v. White, 39,681 (La.App.2d Cir.05/11/05), 903 So.2d 580, 584. The trial court's denial of a motion to suppress is afforded great weight on appellate review and will not be set aside unless the preponderance of the evidence clearly favors suppression. Id. Further, when reviewing the trial court's ruling on a motion to suppress, the appellate court is not limited to only evidence presented at the hearing on the motion; rather, the appellate court may also consider pertinent evidence given at trial. Id.
It is considered per se unreasonable to conduct a search and seizure without a warrant issued on probable cause unless it can be justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Canezaro, 2007-668 (La.06/01/07), 957 So.2d 136, 139. Those exceptions to the warrant requirement include the following: (1) investigatory stops justified by an objective manifestation that the person stopped is, or is about to be, engaged in criminal activity; (2) search of an automobile that is justified by probable cause; (3) standard inventory search; (4) search incident to a lawful arrest; (5) search by consent; and (6) search under exigent circumstances. State v. Warren, 2005-2248 (La.02/22/07), 949 So.2d 1215, 1225-1226. In this case, the state took the position that the search conducted on Chatman's vehicle was a standard inventory search, since the vehicle was impounded as evidence in the shooting offense as it was believed to have been the vehicle Chatman used in that offense. However, Chatman disputes this, arguing that the search did not fall within the inventory search exception. We disagree.
*267 Under the inventory exception to the warrant requirement, the state must show that the impoundment was necessary and the inventory was necessary and reasonable in its scope. State v. Daniels, 614 So.2d 97, 103 (La.App. 2d Cir.1993), writ denied, 619 So.2d 573 (La.1993). An inventory search of an impounded vehicle does not constitute an unreasonable search when it is conducted pursuant to standard police procedure to preserve a car owner's property and to protect the police against claims of lost or stolen property. Id. at 103-104, citing South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).
When evaluating the circumstances surrounding an inventory search to determine whether it was a true inventory search or a sham, the following factors should be considered: (1) whether the officer asked for consent to search; (2) whether the officer asked if other arrangements could be made for the vehicle; (3) whether the officer called for a tow truck prior to starting the search; (4) whether the search was conducted at the site of the arrest or at the place of storage; and, (5) whether the officer asked if the vehicle contained any valuables. State v. Daniels, 614 So.2d at 104, citing State v. Schmidt, 359 So.2d 133 (La.1978). Even so, this court has previously found that conducting the inventory search at the place of the arrest does not make it a sham, even when the other factors are not present, when the evidence as a whole suggests that the search is legitimate. See State v. Daniels, 614 So.2d at 104; State v. Tucker, 591 So.2d 1208, 1217 (La.App. 2d Cir.1991), writ denied, 594 So.2d 1317 (La.1992); State v. Butler, 25,563 (La.App.2d Cir.01/19/94), 631 So.2d 22, 26-27, writ denied, 1998-2216 (La.12/18/98), 732 So.2d 53.
On appeal, Chatman argues that the state failed to present evidence regarding the inventory procedures in Caddo Parish. However, in the present case, Chatman did not argue before the trial court, or in his motion to suppress, that the SPD lacked procedures for conducting inventory searches or the opening of containers during an inventory search. Thus, the failure to raise this argument regarding a lack of inventory procedure before the trial court precludes us from addressing it on appeal. State v. Grant, 41,745 (La.App.2d Cir.04/04/07), 954 So.2d 823, 836, writ denied, XXXX-XXXX (La.12/07/07), 969 So.2d 629.
However, even if Chatman had raised the issue at the trial court, we can find no jurisprudence requiring that the prosecution submit written evidence of procedures for inventory searches, and, in fact, testimony regarding reliance on standardized procedures has been deemed sufficient. See U.S. v. Como, 53 F.3d 87, 92 (5th Cir.1995), cert. denied 516 U.S. 1049, 116 S.Ct. 714, 133 L.Ed.2d 668 (1996), citing U.S. v. Skillern, 947 F.2d 1268, 1275 (5th Cir.1991), cert. denied, 503 U.S. 949, 112 S.Ct. 1509, 117 L.Ed.2d 646 (1992). Here, the following testimony was elicited:
The State: Off. Wilson, can you describe if there is any standard protocol for conducting an inventory search briefly?
Off. Wilson: When we do an inventory search, we search the entire vehicle. That's the protocol. Before we have a vehicle towed to impound, we search the entire vehicle. That releases us from any kind of liability if something may come up missing out of the vehicle.
The State: When you say the entire vehicle, does that include opening the trunk and any bags that may be in the vehicle?

*268 Off. Wilson: Yes.
Notably, we take cognizance of the mandate set forth in Florida v. Wells, 495 U.S. 1, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990) requiring a specific policy with respect to the opening of closed containers during an inventory search. Absent a specific policy, an inventory search that leads to the opening of a closed container would not be considered sufficiently regulated to satisfy the Fourth Amendment, and any evidence found in the closed container would be suppressed. Id. Nonetheless, whereas we would have preferred to have seen the SPD's written protocol on inventory searches (including closed containers) admitted into evidence, the jurisprudence permits reliance on testimony of such protocol or policy. In this case, Off. Wilson's testimony is sufficient on that issue.
Furthermore, in the case sub judice, there is no evidence regarding the factors of State v. Daniels, supra, except for that the search was conducted at the site of the traffic stop. The circumstances of the present case indicate that the vehicle was impounded because Chatman was a known suspect in a shooting that occurred the previous day, and the vehicle was believed to have been used in the commission of the offense. Officer Wilson testified that it is standard procedure to perform an inventory search when impounding a vehicle and to do so before it is towed away in order to insure the police department against liability in the event that property from the vehicle goes missing. The fact that the inventory search was done at the scene of the stop does not negate the validity of the inventory search, and, as already noted herein, the jurisprudence does not require the state to present specific documentation of the inventory search in order to prove its validity. Accordingly, the trial court properly denied the motion to suppress, because the warrantless seizure of the handgun was conducted during a proper inventory search. This argument is therefore without merit.

Sufficiency of the Evidence
In his second assignment of error, Chatman argues that the evidence is not sufficient to support his conviction, because the state did not prove beyond a reasonable doubt that he knew the firearm was in the trunk of the vehicle he was driving. Chatman maintains that he did not have constructive possession of the firearm in the trunk of the vehicle, because he did not have dominion and control over the firearm since it was in the trunk of the vehicle. We disagree.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In the absence of internal contradictions or irreconcilable conflict with physical evidence, the testimony of one witness is sufficient support for a requisite factual conclusion if that witness is believed by the trier of fact. State v. Taylor, 42,627 (La.App.2d Cir.10/24/07), 968 So.2d 1135.
This standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.02/22/06), 922 So.2d 517. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, XXXX-XXXX (La.10/16/95), 661 So.2d 442, 443. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of witnesses, the matter is one of the weight, *269 not the sufficiency, of the evidence. State v. Allen, 36,180 (La.App.2d Cir.09/18/02), 828 So.2d 622, 626, writs denied, 2002-2595 (La.03/28/03), 840 So.2d 566, 2002-2997 (La.06/27/03), 847 So.2d 1255, cert. denied, Allen v. Louisiana, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.08/30/02), 827 So.2d 508, 515, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. State v. Taylor, 42,627 (La.App.2d Cir.10/24/07), 968 So.2d 1135. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Barakat, 38,419 (La.App.2d Cir.06/23/04), 877 So.2d 223, 227. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. Id. To convict a defendant based upon circumstantial evidence, it must exclude every reasonable hypothesis of innocence. Id., citing La. R.S. 15:438.
Here, in order to present sufficient evidence that Chatman was a convicted felon in possession of a firearm pursuant to La. R.S. 14:95.1, the state must prove the following: (1) defendant possessed a firearm; (2) defendant was previously convicted of an enumerated felony; (3) the absence of the 10-year period of limitation; and (4) general intent to commit the offense. State v. Qualls, 40,630 (La.App.2d Cir.01/27/06), 921 So.2d 226. The general intent to commit the offense of possession of a firearm by a convicted felon may be proved through the actual possession of the firearm or through the constructive possession of the firearm. State v. Johnson, XXXX-XXXX (La.04/14/04), 870 So.2d 995, 998. The state presented evidence, and Chatman stipulated to the fact, that he was convicted of armed robbery on January 13, 1995, and armed robbery is a felony considered to be a crime of violence pursuant to La. R.S. 14:2(B)(21). Thus, the state proved that Chatman had been convicted of a felony as enumerated in La. R.S. 14:95.1 and 14:2(13)(jj) and that the 10-year limitations period had not expired.
Therefore, in light of the fact that the firearm was not found on his person, but in the trunk of the car he had rented and was driving, the controverted issue is whether the state presented sufficient evidence to prove that Chatman had the requisite general intent to possess a firearm through constructive possession. Whether the proof is sufficient to establish possession turns on the facts of each case. Further, guilty knowledge may be inferred from the circumstances of the transaction and proved by direct or circumstantial evidence. Id. at 998-999.
Constructive possession of a firearm occurs when the firearm is subject to the defendant's dominion and control. A defendant's dominion and control over a weapon constitutes constructive possession even if it is only temporary and even if the control is shared. State v. Bailey, 511 So.2d 1248, 1250 (La.App. 2d Cir.1987), writ denied, 519 So.2d 132 (La.1988). Constructive possession entails an element of awareness or knowledge that the firearm is there and the general intent to *270 possess it. State v. Kennedy, 42,258 (La. App.2d Cir.08/15/07), 963 So.2d 521, 527.
Here, in regard to evidence of constructive possession, the state presented evidence showing that the vehicle was rented by Chatman and was driven by him at the time of the traffic stop. There was no one else in the vehicle with Chatman at the time of the stop. There was nothing else in the trunk of the vehicle except the black bag that contained the firearm. Further, Detective Johnson testified that Chatman admitted to him that he had handled the firearm and that he knew it was in the trunk. Therefore, the state presented sufficient evidence from which a rational factfinder could determine that Chatman was convicted of an enumerated felony for which the 10-year cleansing period had not expired, he had constructive possession of a firearm, and he had the general intent to do so  leading to his conviction for possession of a firearm by a convicted felon. Therefore, this assignment is without merit.

The State's Motion in Limine
In his third and final assignment of error, Chatman argues that the trial court erred in granting the state's motion in limine to prevent Chatman from mentioning the potential sentencing range for the charged offense during voir dire or argument. Chatman maintains that preventing the jury from hearing information regarding the sentencing range for an offense "cheats" the jury out of exercising their right of jury nullification. He further argues that the Louisiana Supreme Court has held that information regarding the sentencing range is a part of the law of the case and that juries are entitled to know it.
The law regarding whether a defendant is entitled to a jury instruction regarding the sentencing range or to argue the sentencing range before the jury is set forth simply in State v. Jackson, 450 So.2d 621, 633-634 (La.1984):
When the penalty imposed by the statute is a mandatory one, the trial judge must inform the jury of the penalty on request of the defendant and must permit the defense to argue the penalty to the jury. In instances other than when a mandatory legislative penalty with no judicial discretion as to its imposition is required following verdict, the decision to permit or deny an instruction or argument on an offense's penalty is within the discretion of the trial judge.
The fact that an offense has a mandatory minimum sentence is not the same as having a mandatory penalty that would entitle defendant to a jury instruction on the sentencing range or to argue the sentencing range before the jury. In this case, Chatman was charged with an offense for which judicial discretion is allowed in imposing the sentence because it has a sentencing range of not less than 10 but no more than 15 years at hard labor  he was not facing a mandatory sentence for which there would be no judicial discretion. Therefore, he was not entitled to argue information regarding the sentencing range to the jury. See also State v. Gage, 42,279 (La.App.2d Cir.08/29/07), 965 So.2d 592.
Moreover, we disagree with Chatman's argument that the sentence range for an offense is a part of the law of the case and that the jury is therefore entitled to know it. We note that Chatman's reliance on State v. Blackwell, 298 So.2d 798 (La. 1973), cert. denied, 420 U.S. 976, 95 S.Ct. 1401, 43 L.Ed.2d 656 (1975) to support his stance is misplaced, because the case was reversed on rehearing. The Blackwell court ultimately concluded that it was not error for the trial court to refuse to instruct the jury on possible penalties in *271 cases where the jury determines only issues of guilt or innocence and the trial court imposes the penalty because, in those cases, the "penalty is simply of no concern to the jury." Id. at 803-804.
Finally, there is also no support for Chatman's argument that the jury was entitled to know the sentencing range so that it could exercise its right to jury nullification. Jury nullification is a recognized practice which allows the jury to disregard uncontradicted evidence and instructions by the trial court. State v. Divers, 38,524 (La.App.2d Cir.11/23/04), 889 So.2d 335, 352, writ denied, XXXX-XXXX (La.04/08/05), 899 So.2d 2. There is no authority to support Chatman's argument that the jury should be instructed on the right of jury nullification. The failure to give a requested instruction regarding jury nullification does not constitute reversible error because it was not a miscarriage of justice, it did not prejudice the substantial rights of the defendant, and it did not violate a constitutional or statutory right. Id. Therefore, it stands to reason that if there is no right to a jury instruction on jury nullification, there is also no right to argue the sentencing range to the jury based only upon an alleged right to jury nullification. So considering, we conclude that this assignment is therefore without merit.

Error Patent
Our error patent review indicates that Chatman's sentence is illegally lenient, because the trial court failed to impose the mandatory fine. Pursuant to La. R.S. 14:95.1(B), a person convicted of possession of a firearm by a convicted felon "shall be imprisoned at hard labor for not less than ten nor more than fifteen years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars" (emphasis added). In dealing with this type of error before, we have exercised our discretion in whether to vacate the sentence and remand for imposition of the mandatory fine or whether not to correct the failure to impose the mandatory fine. Although we find the omission of the imposition of a fine to be error, we refrain from taking action regarding the omission of the fine in Chatman's sentence for two reasons. First, the state did not object at sentencing nor on this appeal regarding the illegal sentence. See State v. Murray, 42,655 (La.App.2d Cir. 10/24/07) 968 So.2d 916. Second, it is apparent from the record that Chatman is indigent. At the trial level, he was represented by the Caddo Parish Public Defender's office, and on appeal, he was represented by the Louisiana Appellate Project  both which would indicate his indigent status. See State v. Griffin, 41,946 (La.App.2d Cir.05/02/07), 956 So.2d 199. Thus, because: (1) the failure to impose the mandatory fine does not prejudice Chatman; (2) the state failed to object to the sentence or appeal same; and, (3) Chatman is indigent, we exercise our discretion and affirm Chatman's sentence as it was set forth by the trial court.

CONCLUSION
For the foregoing reasons, the conviction and sentence of Marcus Chatman are affirmed.
AFFIRMED.
DREW, J., concurs with written reasons.
DREW, J., concurring.
Although the excellent majority opinion is entirely correct that the officer's vehicular inventory resulted in items being lawfully seized from the trunk of Chatman's *272 car, I ask leave to add these few comments.
Law officers making a lawful custodial arrest are authorized, without more, to contemporaneously search (for evidence or weapons) the person, wingspan, and lunge space of an arrestee. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).
This search incident to a lawful arrest can be triggered if a peace officer develops probable cause to arrest a subject (if the crime allows an arrest, as opposed to requiring a mandatory citation). This search may be conducted immediately before an arrest, or in lieu of an arrest, as long as the officer has probable cause to make the arrest. Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); State v. Sherman, XXXX-XXXX (La.04/04/06), 931 So.2d 286.
Precisely where a defendant is seated at the moment of a vehicular search incident to arrest is largely irrelevant in the analysis of this evidentiary seizure, so long as the arrestee had just been in the car, and was still not far from the car. Thornton v. United States, 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004). After Thornton, no one knows exactly how far is too far, nor how long is too long, but presumably this would be determined by examining the objective reasonableness of the officer's actions in each situation.
The passenger compartment and any containers therein can be searched incident to arrest, even if an arrested defendant is shackled and locked in the back of a patrol car at the moment of the search, as long as he is still close to and was recently in the car. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); State v. Canezaro, 2007-668 (La.6/1/07), 957 So.2d 136, quoting Chimel, supra, and Belton, supra.
Unless there is ready access from the passenger compartment directly into the trunk, nothing seized from a trunk can be justified as the product of a search incident to an arrest ("SITA"). SITA only allows access to a car's passenger compartment, including closed containers located therein. SITA never confers the right to pop the trunk and search it incident to arrest. See Belton, supra.