WILLIAMS, J.
The defendant, Randel I. English, was charged by bill of information with driving while intoxicated ("DWI"), third offense, in violation of La. R.S. 14:98(D). Following a jury trial, the defendant was found guilty as charged. He was sentenced to serve five years at hard labor, with two and one-half years suspended. One year of the prison sentence was ordered to be served without the benefit of parole, probation or suspension of sentence. The trial court also imposed a fine of $2,000. Further, the court ordered the defendant to serve two years of supervised probation upon release from *1147 prison and placed special conditions on the defendant's probation. For the following reasons, we affirm the defendant's conviction. However, we vacate the defendant's sentence and remand this matter to the trial court with instructions to resentence the defendant in full compliance with the provisions set forth in La. R. S. 14:98(D).
FACTS
On October 18, 2013, the defendant, Randel I. English, was arrested for DWI. On November 18, 2013, the state filed a bill of information charging the defendant with DWI, third offense, in violation of La. R.S. 14:98(D). The bill of information identified two previous convictions, both on November 26, 2007, for DWIs that occurred on January 11, 2007, and on February 11, 2007. The defendant waived arraignment and entered a plea of not guilty. Due to numerous requests by defense counsel, the trial was continued until May 16, 2016.
At trial, Michael Mattingly, a taxi cab driver, testified as follows: on October 18, 2013, he was driving his taxicab downtown in Shreveport; the defendant "flagged [him] down" near Stray Cats Bar; the defendant entered his taxicab and instructed him to drive him to another bar called The Cub Lounge; he noticed that the defendant "had a hard time just getting into the cab"; when they arrived at The Cub Lounge (where the defendant's truck was parked), the defendant told him that he was going to drive himself home; he observed the defendant getting out of the taxicab and determined that the defendant "was obviously inebriated"; he advised the defendant "numerous times" that he should not be driving in his condition; he watched the defendant get into a dark gray Ford Ranger pickup truck and start the engine; he watched as the defendant "killed the engine three times" trying to "roll off"; he believed the defendant was having trouble driving the standard-shift vehicle; he called the police department to report a suspected intoxicated driver because he feared for the defendant's safety and the safety of others; and he had known the defendant for 10 years but he did not recognize him on the morning of the incident. Mattingly stated:
I feared for his safety or [the safety of] anyone else. I've actually had friends hit somebody while they were drunk. I've had people I knew get hit by drunk people. And he was way too intoxicated. I tried to advise him four or five times not to drive, but he was persistent.
On cross-examination, Mattingly testified that the defendant did not pay for the taxicab ride. He denied calling 9-1-1 because the defendant failed to pay the cab fare. Mattingly explained that he told the police officer that the defendant did not pay the cab fare because the officer asked him whether the defendant had paid.
Sergeant James Germain, a patrol supervisor for the Shreveport Police Department, testified as follows: on October 18, 2013, at approximately 4:45 a.m., he responded to a call from dispatch; he was informed by dispatch that a taxicab driver had reported that he had driven a customer to The Cub Lounge and the customer did not pay the cab fare, was highly intoxicated, was getting into a vehicle and was "fixing to drive away"; the caller had described the vehicle as a gray Ford Ranger pickup truck; he located the vehicle at an intersection near The Cub Lounge; he activated his mobile video system ("MVS") and pursued the truck; the defendant pulled over and stopped after "maybe 30 seconds";[1] the defendant exited the vehicle when he was given a verbal *1148 command to do so; another Shreveport police officer, Shane Prothro, was assigned to the DWI Unit; Ofc. Prothro arrived on the scene as he was stopping the defendant; and Ofc. Prothro performed field sobriety tests on the defendant.
On cross-examination, Sgt. Germain admitted that prior to stopping the defendant, he observed the defendant driving for approximately one-half mile, down several streets, taking several turns and negotiating a 60-90 degree curve. He also admitted that he did not see the defendant run off of the road or commit any traffic violation. Sgt. Germain testified that he had probable cause to stop the defendant due to the report of a theft (of the taxicab fare). He stated that he did not suspect the defendant of being intoxicated until the defendant exited his truck. Sgt. Germain testified that when the defendant exited the vehicle, he observed that he had a "slight waver to his stance[.]"
Ofc. Shane Prothro testified as follows: on the morning October 18, 2013, he was assigned to the DWI task force with the Shreveport Police Department; he responded to a call from Sgt. Germain, who told him that he was following a driver who was possibly impaired; he arrived on the scene in time to observe the defendant exiting his truck; the defendant "appeared to stumble out of the driver's side door" of his vehicle; the defendant approached Sgt. Germain's patrol vehicle when he was ordered to do so; he patted the defendant down and "detected the strong odor of an alcoholic beverage coming from him"; the odor of alcohol was "more pronounced" when [the defendant] was speaking towards [Ofc. Prothro]"; the defendant denied drinking alcohol that night; the defendant "appeared to be off-balance," and he was "swaying from side to side and front to back"; the defendant's "eyes were very glassed over and red" and his speech was slurred; his observations led him to believe the defendant was "extremely impaired, the highest level of impairment"; he performed a field sobriety test on the defendant; specifically, he performed the horizontal gaze nystagmus ("HGN") eye test, looking for a nystagmus, an involuntary jerking of the eyes, at certain points in the test, which indicates that a subject is impaired; the HGN results showed that the defendant exhibited six clues of intoxication; he also noticed that the defendant swayed with the movement of stimulus; the defendant was unable to recite the full alphabet, despite being given three opportunities to do so;[2] he determined that the defendant was impaired after he was given the HGN eye test and the defendant's inability to recite the alphabet "just made my feelings about him being impaired even stronger."
Ofc. Prothro further testified as follows: he instructed the defendant to perform a "one-leg test," but the defendant refused to comply any further "without an attorney being present"; he determined that the defendant "was too impaired to be operating a motor vehicle in the public roadways"; he arrested the defendant and placed him in the backseat of the patrol car; the defendant appeared "very relaxed with his head down"; and when they arrived at the police station, the defendant refused to submit to a chemical blood alcohol test.
On cross-examination, Ofc. Prothro testified as follows: the defendant was cooperative during the traffic stop; the defendant produced his driver's license when requested to do so and he responded to the police officers' questions; the defendant *1149 walked to the patrol car when instructed and he did not "trip, fall or stumble" while doing so; various medical conditions can cause nystagmus, such as some types of astigmatism and head trauma ; he did not ask the defendant if he suffered from astigmatism prior to administering the eye test; he asked the defendant to complete a medical questionnaire when they arrived at the police station, but the defendant refused to do so and invoked his right to counsel; the defendant was placed in the backseat of the patrol car with his hands handcuffed behind him and without a seatbelt; when they arrived at the police station, he escorted the defendant to the "Intoxilyzer room," where DWI suspects are usually taken, advised the defendant of his Miranda rights, including his rights in connection with the Intoxilyzer test and reviewed the medical questionnaire with him; and the defendant "refused everything."
The Intoxilyzer room contains a camera that recorded the interaction between Ofc. Prothro and the defendant. The video recording was played in the presence of the jury during the cross-examination of Ofc. Prothro. After the video was played, Ofc. Prothro admitted that the recording did not show the defendant "fumbling or stumbling" as he walked into the Intoxilyzer room. He stated that the video showed that the defendant had "one little stumble, does a little bit of swaying while standing in the room, but otherwise was fairly erect and appears to be attentive." Further, he testified that he instructed the defendant to stand in one spot in the room while he asked him a series of questions; after each question he instructed the defendant to say, "I refuse" if he did not want to respond. He stated that the defendant responded to each question by stating, "I refuse." Ofc. Prothro admitted that the defendant was attentive, responsive to questions and gave "logical answers" based on the instructions given to him.
On redirect examination, Ofc. Prothro testified as follows: in his experience, people who are impaired can be cooperative and do not necessarily have to be combative; the defendant never told him that he had any health problems or eye conditions; he was unaware of any medical issues that would cause a strong odor of alcohol to emanate from a person; he uses a focal point in the Intoxilyzer room to determine if a person is swaying; he determined that the defendant was swaying while standing in the room; and there was nothing in the Intoxilyer room that would have caused the defendant to stumble.
Detective Danny Duddy, the supervisor of crime scene investigation unit for the Shreveport Police Department, testified as a fingerprint expert. Det. Duddy testified that he compared fingerprints from the two November 26, 2007 convictions, Criminal Docket No. 256764 and Criminal Docket No. 257434, for DWI, second offense, of a defendant named Randel English, with fingerprints obtained from the defendant in the courtroom. Det. Duddy concluded that the defendant was the same person convicted in both cases in 2007.[3]
The defendant did not call any witnesses to testify. After deliberating, the jury found the defendant guilty as charged of DWI, third offense. Thereafter, the defendant filed a motion for a new trial and a motion for judgment of acquittal; the trial court denied both motions. Following a sentencing hearing, the trial court stated:
The Court will impose the mandatory fine of $2,000. As to this period of incarceration, *1150 the Court believes that five years at hard labor, [sic]. I will suspend two and one-half years. So it will be an evenly split sentence. Two and a half years is suspended. The other portion is unsuspended, and one year of that-one year of the two and a half years that is not suspended is also to be served as required by statute without the benefit of parole, probation or suspension of sentence. So that is two and a half and two and a half. Upon the completion of the unsuspended portion, the defendant is placed on active, supervised probation for a period of two years. Special conditions, that he only drive vehicles equipped with ignition interlock on any public road[.] Substance abuse and alcohol counseling and all other lawful conditions of probation as set forth under Code of Criminal Procedure Article 895. Court costs and fine may be assessed through inmate banking. If they're not satisfied, then any remaining balance will be a condition of probation.
The defendant now appeals.
DISCUSSION
The defendant contends the evidence was insufficient to support his conviction for DWI, third offense. He argues that the state did not have sufficient evidence to prove, beyond a reasonable doubt, that he operated a vehicle while intoxicated. According to the defendant, the video recordings introduced into evidence proved that he did not speak or behave as if he was intoxicated. Specifically, the defendant argues that the video recordings show that he did not "stumble, fumble," speak with slurred speech, argue with the police officers or "do any of the other manifestations of a person who is intoxicated."
The standard of appellate review of a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. Tate , 2001-1658 (La. 5/20/03), 851 So.2d 921, cert denied , 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford , 2005-0477 (La. 2/22/06), 922 So.2d 517 ; State v. Robertson , 1996-1048 (La. 10/4/96), 680 So.2d 1165. On appeal, a reviewing court must view the evidence in the light most favorable to the prosecution, and must presume in support of the judgment, the existence of every fact the trier of fact could reasonably deduce from the evidence. Jackson , supra .
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith , 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Eason , 43,788 (La. App. 2 Cir. 2/25/09, 3 So.3d 685, writ denied , 2009-0725 (La. 12/11/09), 23 So.3d 913, cert. denied , 561 U.S. 1013, 130 S.Ct. 3472, 177 L.Ed.2d 1068 (2010) ; State v. Hill , 42,025 (La. App. 2 Cir. 5/9/07), 956 So.2d 758, writ denied , 2007-1209 (La. 12/14/07), 970 So.2d 529.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational trier *1151 of fact to conclude, beyond a reasonable doubt, that the defendant was guilty of every essential element of the crime. State v. Sutton , 436 So.2d 471 (La. 1983) ; State v. Barakat , 38,419 (La. App. 2 Cir. 6/23/04), 877 So.2d 223 ; State v. Owens , 30,903 (La. App. 2 Cir. 9/25/98), 719 So.2d 610, writ denied , 98-2723 (La. 2/5/99), 737 So.2d 747.
To convict a defendant based upon circumstantial evidence, every reasonable hypothesis of innocence must be excluded. State v. Barakat , supra , citing La. R.S. 15:438.[4] In the absence of internal contradiction or irreconcilable conflict with the physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Burd , 40,480 (La. App. 2 Cir. 1/27/06), 921 So.2d 219, writ denied , 2006-1083 (La. 11/9/06), 941 So.2d 35.
At the time of the defendant's arrest, La. R.S. 14:98 provided, in pertinent part:
A. (1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle *** when:
(a) The operator is under the influence of alcoholic beverages; or
(b) The operator's blood alcohol concentration is 0.08 percent or more by weight based on grams of alcohol per one hundred centimeters of blood[.]
* * *
Thus, in this case, in order to support the defendant's conviction of DWI, the prosecution must prove that (1) the defendant was operating a vehicle and (2) he was under the influence of alcohol or drugs while doing so. La. R.S. 14:98(A)(1)(a) ; State v. Pickard , 40,422 (La. App. 2 Cir. 12/14/05), 918 So.2d 485 ; State v. Minnifield , 31,527 (La. App. 2 Cir. 1/20/99), 727 So.2d 1207, writ denied , 99-0516 (La. 6/18/99), 745 So.2d 19. To support a conviction of DWI, third offense, the state must also prove that the defendant has had two prior valid convictions, as defined in La. R.S. 14:98(F)(1),[5] and that the prior convictions are not stale under La. R.S. 14:98(F)(2).[6] State v. Pickard , supra ; State v. Inzina , 31,439 (La. App. 2 Cir. 12/9/98), 728 So.2d 458.
The defendant does not dispute his prior convictions for DWI. Therefore, the only issue on appeal is whether the evidence was sufficient to support his conviction in the instant matter.
It is well settled that behavioral manifestations, independent of any scientific tests, are sufficient to support a conviction of DWI.
*1152 State v. Henix , 46,396 (La. App. 2 Cir. 8/10/11), 73 So.3d 952 ; State v. Gage , 42,279 (La. App. 2 Cir. 8/29/07), 965 So.2d 592, writ denied , 2007-1910 (La. 2/22/08), 976 So.2d 1283 ; State v. Harper , 40,321 (La. App. 2 Cir. 12/14/05), 916 So.2d 1252. It is not necessary that the conviction be based upon a breath or blood alcohol test. The observations of an arresting officer may be sufficient to establish guilt. Intoxication is an observable condition about which a witness may testify. State v. Allen , 440 So.2d 1330 (La. 1983) ; State v. Henix , supra . Furthermore, a defendant's refusal to submit to a breath test is admissible to support a conviction for DWI; the weight of that evidence is left to the trier of fact. La. R.S. 32:666(A) ;[7] State v. Dugas , 252 La. 345, 211 So.2d 285 (1968), cert denied , 393 U.S. 1048, 89 S.Ct. 679, 21 L.Ed.2d 691 (1969) ; State v. Henix , supra .
In the instant case, the defendant refused to undergo a breath or blood alcohol test. Consequently, his conviction rests solely upon the observations of the witnesses.
During the trial, Mattingly and Ofc. Prothro described the defendant's appearance and behavior on the morning of his arrest. According to Mattingly and Ofc. Prothro, the defendant's behavior was consistent with a person who is intoxicated. Mattingly testified that he was familiar with the defendant and described him as "obviously inebriated." He also testified that the defendant was unable to drive his vehicle because he was unable to keep the standard-shift vehicle in the proper gear. Further, Mattingly testified that he called 9-1-1 because he was concerned about the defendant's safety and the safety of others.[8]
Ofc. Prothro, who is trained to identify persons who are impaired by alcohol or drugs, testified that he observed the defendant and noted that he emitted a "strong odor" of alcohol. He also testified that the defendant had stuttered speech and "glassy and red" eyes. Further, the officer testified with regard to administering field sobriety tests to the defendant. According to Ofc. Prothro, the defendant stumbled, swayed and failed the field sobriety tests. Based on that evidence, Ofc. Prothro opined that the defendant was "highly" intoxicated.
Further, the video and audio recordings introduced into evidence confirmed Ofc. Prothro's testimony. A review of those recordings reveals that the defendant had difficulty reciting the alphabet while he was on the arrest scene. He also appeared to stumble as he entered the Intoxilyzer room at the police station.
It is apparent from the verdict that the jury found the testimony of Ofc. Prothro and Mattingly to be credible. In addition, the jury was able to view the video evidence of the defendant firsthand. After reviewing the evidence in a light most *1153 favorable to the prosecution, we find that the jury had sufficient evidence to conclude that the defendant was driving while intoxicated. This assignment lacks merit.
The defendant also contends the trial court abused its discretion in denying his request to advise and instruct the jury with regard to the mandatory minimum sentence for DWI, third offense. He argues that he was prejudiced by the trial court's refusal to inform the jury of the "harsh penalties" for a DWI, third conviction, in light of the fact that minutes from the prior convictions show that the penalties for those convictions were "far more lenient" than the penalty for DWI, third offense. The defendant concedes that Louisiana law does not require a jury to be instructed on the penalties imposed. However, he cites State v. Gage , supra , to support his argument that the trial court abused its discretion by failing to instruct the jury on the penalties. According to the defendant, had the jury known of the harsh penalties for DWI, third offense, it may have returned a different verdict because there was no "scientific evidence" of his intoxication.
It is well settled that when the penalty imposed by the state is a mandatory one, upon the defendant's request, the trial court must inform the jury of the penalty and must permit the defense to argue the penalty to the jury. State v. Jackson , 450 So.2d 621 (La. 1984), citing State v. Hooks , 421 So.2d 880 (La. 1982) ; State v. Washington , 367 So.2d 4 (La. 1978). In other instances, the decision to deny an instruction or argument on the penalty for an offense is within the discretion of the trial judge. State v. Jackson , supra , citing State v. Williams , 420 So.2d 1116 (La. 1982) ; State v. Blackwell , 298 So.2d 798 (La. 1974) (on reh'g), cert. denied , 420 U.S. 976, 95 S.Ct. 1401, 43 L.Ed.2d 656 (1975) ; State v. Chatman , 43,184 (La. App. 2 Cir. 4/30/08), 981 So.2d 260 ; State v. Gage , supra ; State v. Green , 437 So.2d 302 (La. App. 2 Cir. 1983), writ denied , 443 So.2d 1121 (La. 1984). Sentence regulations, such as those relating to mandatory terms, parole or probation, form no part of the applicable law for the judge to charge the jury. State v. Prater , 337 So.2d 1107 (La. 1976) ; State v. Harris , 258 La. 720, 247 So.2d 847 (La. 1971) ; State v. Green , supra .
In State v. Gage , supra , the trial court allowed jury instructions regarding some of the sentencing provisions for DWI, fourth offense. Specifically, the trial court instructed the jury that, if the defendant was convicted as charged, he would be fined and imprisoned "from 10 to 30 years, sixty days" of which would be served without the benefit of probation, parole or suspension of sentence. The defendant appealed his conviction, arguing, inter alia , that his trial counsel was ineffective because he failed to object to the aforementioned jury charge which did not correctly identify the amount of time that the defendant would serve without benefits. This Court affirmed the defendant's conviction, finding that a jury charge regarding the mandatory minimum sentence was not one mandated by law, but was within the discretion of the trial court. State v. Gage , supra , at 609, citing State v. Jackson , supra . This Court also held that the incorrect portion of the jury charge did not prejudicially lead to the defendant's conviction. It concluded that the main thrust of the jury charge clearly revealed the possibility of the sentencing range of 10 to 30 years, which opened the door for the defendant to argue the harshness of the sentencing range in the hope of a verdict of a lesser included charge.
In State v. Chatman , supra , the defendant was convicted of possession of a firearm by a convicted felon. On appeal, he argued, in pertinent part, that the trial *1154 court erred in granting the state's motion in limine to prevent him from mentioning the potential sentencing range for the charged offense (not less than 10 but no more than 15 years at hard labor) during voir dire or argument. The defendant argued that preventing the jury from hearing information regarding the sentencing range "cheated" the jury from exercising its right of jury nullification and that the information was a part of the law. On appeal, this Court held that the defendant did not have a right to notify the jury of the sentencing range. Citing State v. Jackson , supra , this Court found that a sentence imposed with judicial discretion is the province of the trial court, not the jury, and is not the law of the case. We also found that a mandatory minimum sentence is not the same as a mandatory penalty that would entitle a defendant to a jury instruction or argument as to the sentencing range. Id. at 270-71. Further, we noted that in State v. Blackwell , supra , the Louisiana Supreme Court "ultimately concluded that it was not error for the trial court to refuse to instruct the jury on possible penalties in cases where the jury determines only issues of guilt or innocence and the trial court imposes the penalty because, in those cases, the penalty is simply of no concern to the jury." State v. Chatman , supra, at 270-71, quoting State v. Blackwell , supra , at 803-04. Consequently, we concluded that the trial court's refusal to allow a jury instruction or arguments to the jury on the penalty provisions of the offense was not reversible error "because it was not a miscarriage of justice, it did not prejudice the substantial right of the defendant, and it did not violate a constitutional or statutory right. State v. Chatman , supra, at 271.
In the instant case, the record reveals that on the day of trial, the defense requested permission to discuss sentencing for the offense with the prospective jurors during voir dire, mention sentencing in opening and closing statements and to have the jury instructed with regard to the sentencing range. The state objected to the defendant's request, citing State v. Johnson , 2001-2350 (La. App. 4 Cir. 6/12/02), 820 So.2d 1223, writ denied , 2002-1948 (La. 10/3/03), 855 So.2d 293, on the basis that the court is not required or mandated to instruct the jury regarding any mandatory sentence unless it is a life sentence. The trial court, citing State v. Johnson , supra , and State v. Lewis , 296 So.2d 824 (La. 1974), found that when the sentence is a "mandatory minimum," it is within the court's discretion whether to inform the jury of the penalty, but that it is generally disfavored. The trial court denied the defendant's request, stating:
And in the exercise of my discretion on that point, I would not permit reference to the mandatory minimum since it could in this Court's opinion only serve to violate the instruction from the jury charge that they are not to be influenced by sympathy, passion, prejudice or public opinion. They might think it's too harsh, and they might conversely think it is too lenient. And that should not be what they decide in either event since they are not the ones imposing the sentence. So the Court will deny the request-the defense request and instead issue an order that there is to be no mention by either side as to the range of penalties possible under the sentencing law of 14:98(D).
We find that the trial court did not abuse its discretion in denying the defendant's request for a jury instruction or argument regarding the mandatory minimum sentencing range for a conviction of DWI, third offense. Louisiana jurisprudence clearly holds that, except for those cases where the trial court has no judicial discretion in the sentence imposed, it is not error for the trial court to refuse to instruct the jury regarding the penalty for *1155 an offense. See State v. Blackwell , supra ; State v. Chatman , supra . Any penalty the trial court might have imposed in this case had no impact on the jury's determination of guilt or innocence. This assignment lacks merit.
ERROR PATENT
In accordance with La. C. Cr. P. art. 920, we have reviewed this record for errors patent. We have found errors with regard to the defendant's sentence. Specifically, the sentence is illegally lenient because the trial court failed to comply with the sentencing provisions set forth in La. R.S. 14:98(D) (as it existed at the time of the offense) in the following regards: (1) the court failed to order the defendant to serve the entirety of the suspended portion of the sentence under supervised probation pursuant to subsection (1)(a); (2) the court failed to order the defendant to participate in 30 eight-hour days of court-approved community service activities pursuant to subsection (1)(b); the court failed to order that the defendant be subjected to a period of home incarceration during his supervised probation pursuant to subsections (1)(c) and (3); and the court failed to order that the defendant be required to obtain employment pursuant to subsection (3)(b). Furthermore, although the trial court ordered the defendant to undergo substance abuse and alcohol counseling, it did not specifically order him to participate in one of the two mandated substance abuse programs mandated by La. R.S. 14:98(D)(1)(b)(i)-(ii).
The requirements set forth in the previous paragraph are not corrected automatically by operation of La. R.S. 15:301.1, which applies to determinate terms of a sentence to be served without benefits. See State v. Williams , 2000-1725 (La. 11/28/01), 800 So.2d 790 ; see also State v. Hotard , 44,431 (La. App. 2 Cir. 6/24/09), 17 So.3d 64. Although neither the state nor the defendant raised this sentencing error in either the trial court or on appeal, this Court may notice illegally lenient sentences on error patent review. La. C. Cr. P. art. 882 ; State v. Payne , 47,481 (La. App. 2 Cir. 12/12/12), 108 So.3d 174 ; State v. Smith , 44,011 (La. App. 2 Cir. 4/8/09), 7 So.3d 855. Accordingly, we vacate the defendant's sentence and remand this matter to the trial court with instructions to resentence the defendant in full compliance with the provisions set forth in La. R. S. 14:98(D) in effect at the time of the commission of the offense.
CONCLUSION
For the foregoing reasons, we affirm the defendant's conviction. We vacate the defendant's sentence and remand this matter to the trial court with instructions to resentence the defendant in full compliance with the provisions set forth in La. R. S. 14:98(D).
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.

The MVS recorded the pursuit and the stop. The video recording was admitted into evidence and played for the jury without objection.

Ofc. Prothro stated, "On all three [alphabet] tests, [the defendant] was able to recite A, B, C. And then on all three tests he would pause after C, and he would mumble a couple of additional letters. I believe J, K, L, maybe. And then he would pause again."

During Det. Duddy's testimony, the state submitted into evidence copies of the bills of information and minutes from both 2007 convictions, which reflected that the defendant had pled guilty to both charges, was informed of his constitutional rights and was represented by counsel during the plea colloquy.

La. R.S. 15:438 provides:
The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.

At the time of the defendant's arrest, La. R.S. 14:98(F)(1) provided:
For purposes of determining whether a defendant has a prior conviction for violation of this Section, *** a conviction under the laws of any state or an ordinance of a municipality, town or similar political subdivision or another state, which prohibits the operation of any motor vehicle *** while intoxicated, while impaired, or while under the influence of alcohol, drugs, or any controlled dangerous substance shall constitute a prior conviction. This determination shall be made by the court as a matter of law.

At the time of the defendant's arrest, La. R.S. 14:98(F)(2) provided:
For purposes of this Section, a prior conviction shall not include a conviction for an offense under this Section *** if committed more than ten years prior to the commission of the crime for which the defendant is being tried and such conviction shall not be considered in the assessment of penalties hereunder[.]

At the time of the defendant's arrest, La. R.S. 32:666(A)(2) provided, in pertinent part:
(2) [A] person under arrest for a violation of R.S. 14:98 *** may refuse to submit to such chemical test or tests, after being advised of the consequences of such refusal *** subject to the following:
***
(c) Evidence of his refusal shall be admissible in any criminal action or proceeding arising out of acts alleged to have been committed while the person, regardless of age, was driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of alcoholic beverages or any abused substance or controlled dangerous substance[.] ***

Whether Mattingly was truly concerned about the defendant driving a vehicle while intoxicated or about not receiving his cab fare was a credibility question for the jury and not relevant to the central issue of whether the defendant was operating a vehicle while intoxicated.